## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMAL SCOTT,

               Plaintiff,

     v.

KEVIN KAUFFMAN, et al,

               Defendants.

CIVIL ACTION NO. 3:19-CV-00695

(MEHALCHICK, M.J.)[1]

### MEMORANDUM

Plaintiff Jamal Scott, an inmate currently housed at the State Correctional Institution (SCI) at Huntingdon, commenced this action *pro se* on April 29, 2019, asserting violations of his federal civil rights under 42 U.S.C. § 1983 for which he seeks injunctive and monetary relief. (Doc. 1). He asserts causes of action against ten defendants: (1) the Pennsylvania Department of Corrections (DOC); (2) SCI-Huntingdon staff including Facility Manager Kevin Kauffman, Facility Chaplaincy Program Director Mr. Wireman, Corrections Classification Program Manager Ms. Sipple, Deputy Superintendent Scott Walters, Facility Chaplain Bilgan Erdogan, and Corrections Officers Hawn and Mills; (3) John Wetzel, the Secretary of Corrections; and (4) Ulrich H. Klem, DOC's Religion Volunteer and Recreational Services Program Administrator (collectively, "Defendants"). (Doc. 1, at 1-2).

Defendants move to dismiss Scott's complaint pursuant to Rule 8 of the Federal Rules

---

[1] In November 2019, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to this action. (Doc. 16).

of Civil Procedure. (Doc. 14). Scott filed a brief in opposition (Doc. 17), and the motion to dismiss is now ripe for review.

For the reasons discussed herein, Defendants' motion is **DENIED**.

I.   BACKGROUND[2]

Scott's allegations are divided into six parts, each of which is addresses below.

   1.   <u>First Set of Allegations: "Denial of Free Exercise of Religion and First Amendment's Free Exercise Clause (Wireman, Sipple, Klemm, Kauffman, Bilgan).</u>

Scott is a practicing Sunni Muslim and a member of the Ahlus-Sunnah Muslim Community (ASMC) at SCI-Huntingdon, which community is a result of a settlement agreement Scott allegedly reached with defendants in *Jamal Scott v. Bilgan Erdogan, et al.*, No. 12-CV-2041 ("Settlement Agreement"). (Doc. 1, at 1). In 2018, Scott intended to perform his obligatory month of fasting for Ramadan. (Doc. 1, at 1-2). Defendant Wireman distributed a "2018 Ramadan Sign-Up Form," which Scott signed and submitted. (Doc. 1, at 3). Wireman returned the sign-up form and provided Scott with a letter from Defendant Klemm because Scott initially did not check any of the boxes on the form. (Doc. 1, at 3). Scott checked the boxes where indicated and resubmitted the form "with a request slip"; apparently, he did not sign the form. (Doc. 1, at 3). Wireman again returned the sign-up form, indicating, in red ink, "NEED SIGNATURE ON FORM!" (Doc. 1, at 3). Wireman insisted that Scott sign the form in order to be permitted to fast for Ramadan. (Doc. 1, at 3).

Separately, about one year earlier, in March 2017, Scott submitted an "Eid Proposal"

---

[2] The Court's recitation of facts is drawn from Scott's complaint, the allegations of which the Court must presume are true for purposes of Defendants' motion to dismiss. *See Jordan v. Fox, Rothschild*, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

to Superintendent J. Thomas and Defendants Sipple and Wireman, none of whom responded. (Doc. 1, at 3). While it is not entirely clear what Scott's Eid Proposal consisted of, construing his allegations liberally, it appears that he proposed that Muslim inmates be permitted to observe certain ceremonies, including on the day after Ramadan is complete. (Doc. 1, at 3). In April 2017, Scott submitted a "Ahlus-Sunnah Muslim Community's Proposal" to Defendant Kauffman, who responded that the proposal was under review." (Doc. 1, at 3-4). In June 2017, Defendant Sipple responded, denying Scott's Eid Proposal. (Doc. 1, at 4).

Then, in March 2018, Scott wrote to Defendants Kauffman and Wireman asking for, "among other things, 'Id Holy day observances," to which a Ms. Spyker responded that Scott should submit a Religious Accommodation Request Form ("RAR Form"). (Doc. 1, at 4). Scott alleges that Spyker's "advice [wa]s invalid" because, under DC-ADM 819, the RAR Form is for requests for non-grooming-related religious accommodations "not already approved, whereas the DOC has approved Faith Group Ceremonial Meals for the celebration of major religious holy days. (Doc. 1, at 4). In connection with these allegations, Scott also asserts that "Central Office constructed a form with questions seeking to gauge the quality of the religious services that each Faith Group is provided in the prisons." (Doc. 1, at 4). Two ASMC inmates filled out forms in a 2017 "Religious Audit interview," and Scott and another ASCM inmate filled out the same forms in 2018 – this process was overseen by the Facility Chaplaincy Program Director (FCPD) of SCI-Fayette.

   **2.  Second Set of Allegations: "Violations of Rights of Equal Protection Section 1983, and Fourth and Fifth Amendment Equal Protection Clause Without Due Process of Law in Implementation of Racist Ramadan Sign-Up Form That Does Not Further Any Legitimate Penal Interest and Creates a Substantial Burden under [the Religious Land Use and Institutionalized Persons Act (RLUIPA)] (Mr. Klemm, Mr. Wireman, Mr. Erdogan)".**

Scott next alleges that the sign-up form required to participate in Ramadan serves no legitimate purpose and unfairly targets Muslims, who are predominantly black inmates. (Doc. 1, at 5). The sign-up form requires the participant to agree to only a 30-day fast, "whereas Islam has more than the 30 day fasting period." (Doc. 1, at 5-6). Further, inmates of other faith groups – such "Protestant, Catholic, Jewish, Jehovah Witness, . . . and Native American" – are permitted to observe holidays without having to sign a form. (Doc. 1, at 5). Because of Scott's refusal to sign the Ramadan observance form, he was not permitted, during the 2018 Ramadan, to take his allergy medicine during the morning and was left only with the option to take it at night in violation of his fasting. (Doc. 1, at 5).

   **3.  Third Set of Allegations: "Denial of Free Exercise of Religion Under Section 1983 and First Amendment's Free Exercise Clause Without Due Process Under Section 1983 and Fourteenth Amendment's Due Process Clause (Wireman, Kauffman, Klemm, Mr. Erdogan)".**

In his third set of allegations, Scott alleges that because of DOC's policy of prohibiting an inmate from taking food from the kitchen but for one piece of fruit, he was unable to fast in a healthy manner during Ramadan. (Doc. 1, at 6). He further alleges that Defendant Kauffman signed off on but never implemented the Settlement Agreement, and that Defendants Kauffman, Wireman, Sipple, and Walters feigned attempts to comply with the Settlement Agreement until the "time ran for the agreement to become binding." (Doc. 1, at 6). In March 2018, Scott wrote Defendants Wireman and Kauffman and field a grievance complaining about "our lack of holy day observances, religious activities, volunteers, lack of

classes, and literature, and having our own oil." (Doc. 1, at 6).

Regarding Scott's attempt to observe Ramadan in 2018, Scott indicates that in 2017 he did not sign or check any of the boxes in the sign-up form and yet was still permitted to fast. (Doc. 1, at 7). He therefore alleges that the April 2018 rejection of his unsigned sign-up form was in retaliation for complaints and grievances. (Doc. 1, at 7).

### 4. **Fourth Set of Allegations: "Retaliatory Cell Search".**

In June 2018, after Scott's "numerous request[s] and filing of grievances to [Defendants Kauffman, Wireman, and Walters," two corrections officers searched his cell. (Doc. 1, at 7). The officers dumped Scott's property, mixed his religious property with other of his belongings, placed Scott's Quran on the top of the cell's toilet, ripped open a package of food, threw his clean clothes on the trash, and disputed Scott's ownership of property that was clearly identified as being owned by Scott. (Doc. 1, at 7). Scott told Defendant Mills, who was walking through that tier, about the other officers' conduct, and Mills told Scott to file a grievance, which he did. (Doc. 1, at 7).

### 5. **Fifth Set of Allegations: "Retaliatory Placement in the Restricted Housing Unit (RHU) (Mr. Walters, Mr. Kauffman, Mr. Wireman)".**

In January 2018, Scott provided a six-page informative listing to Defendants Wireman, Kauffman, Klem, Walters, and Bilgan and Connie Green indicating "all of the instances the administration was not complying with the settlement agreement, and violating administrative policy, and Plaintiff's rights to practice his religion." (Doc. 1, at 8). On January 7, 2018, as Defendant Walters was making his rounds through the laundry, he became irate and angry at Scott. (Doc. 1, at 8). He asked Scott, in part, whether there was a prison Scott wished to be transferred to where "other inmates believed as he did." (Doc. 1, at 8). Walters

then insulted the ASMC members and indicated he was "upset about the reference to women walking pas[t] with the door open distracting the ASMC service." (Doc. 1, at 8).

On February 1, 2019,[3] Scott was denied his noon meal and then taken to the Restricted Housing Unit (RHU) under administrative custody. (Doc. 1, 8). There, RHU staff took items of Scott's property without a confiscation slip, and left Scott with a box containing only some of his property for which he was given a confiscation slip. (Doc. 1, at 8). Scott was then ordered to have that box of property sent out or destroyed, even though he was promised that he would be allowed to keep the box of property. (Doc. 1, at 8). During this time of RHU confinement, Scott was denied, *inter alia*, of a shower and the right to observe prayer services, only to be released without a misconduct report ever being issued. (Doc. 1, at 8). He alleges that he was held in the RHU for weeks beyond what is permitted under administrative custody. (Doc. 1, at 8). He was told no cell was available, despite that a corrections officer later told him that one cell had been open for days. (Doc. 1, at 8-9).

Scott was released from RHU and administrative custody only to be placed back into the RHU several weeks later, in March 2019, without any misconduct report having been issued. (Doc. 1, at 9). During his second stint in the RHU, he was denied his allergy medication, he was wrongfully directed to throw away some of his property, and some of his property was missing or destroyed, including a prayer schedule.

---

[3] Scott alleges that he was first placed in the RHU under administrative custody in February 1, 2018, not 2019. (Doc. 1, at 8). However, Scott alleges that he was placed back in the RHU "two and a half weeks" after first being released from the RHU, on March 3, 2019. Scott later alleges that he was in the RHU on February 1, 2019. (Doc. 1, at 13). Further, a February 2019 initial-placement-in-RHU date fits with the general timeline set forth by Scott in his complaint. (*See* Doc. 1, at 7-9).

**6. Sixth Set of Allegations: Violation of Rights by Establishment of Religion under Section 1983 and First Amendment's Establishment Clause. Conspiracy to Establish a Religious Practice under Section 1983 and First Amendment's Establishment Clause (Kauffman, Klemm, Wireman, Sipple, Erdogan, Walters, Wetzel).**

Scott's final set of allegations consists of a range of claims that Defendants intentionally impeded and frustrated the ASMC community and Scott from observing their religious holy days and practicing their religion generally. The allegations appear to take place during late 2018 through 2019, although Scott does not specifically indicate when all the alleged conduct occurred. (Doc. 1, at 10-19).

Scott alleges, among other things, that (1) Defendants "promoted and fostered the prison's Jumuah service led by prison staff instead of the ASMC's Friday prayer service"; (2) Defendants placed ASMC service in a distracting area of the prison and demanded ID cards; (3) the ASMC services are not called over the loudspeaker, which frustrates new inmates' ability to learn about the ASMC services; (4) the rug provided to Scott is too thick and is "not a rug meant to pray on"; (5) Defendant Wireman is a consistent distraction, refuses to sit in the back during the prayer service, and leaves the door open to a busy corridor where staff talk to one another; (6) Defendants Wireman, Erdogan, and Klem have not attempted to recruit a volunteer religious teacher or Imam for the ASMC; (7) Defendants Wireman and Erdogan refuse to provide religious reading material to the ASMC; (8) there is no water source in the ASMC services room, which is essential for prayer, and the room is always dirty and not set up; and (9) Defendant Erdogan "preached the message that[] the creation of the ASMC was an act of deviation from the 'community.'" (Doc. 1, at 10-13).

**7. Assertion of RLUIPA Violations and Demand for Relief**

At the end of his complaint, Scott asserts that Defendants placed a substantial burden

on his religious exercise of the 2018 Ramadan fast by enforcing "food-control regulations without first considering whether the purpose of those regulations could be accomplished by other means that would be less burdensome to the religious exercise." (Doc. 1, at 13). He further asserts that Defendants substantially burdened his religious exercise on two 'Id celebrations without considering other, less-burdensome means. (Doc. 1, at 13). Finally, he asserts that due to these RLUIPA violations, he has suffered injuries as alleged in his complaint. (Doc. 1, at 13).

For relief, Scott seeks the following: (1) declaratory relief "by finding that the Defendants violated his constitutional and statutory rights"; (2) injunctive relief "by enjoining DOC to provide accommodations to enable [him] to observe the fast of Ramadan henceforth"; (3) compensatory damages; (4) punitive damages; and (5) litigation costs. (Doc. 1, at 14).

## II.  DISCUSSION

Defendants submit that Scott's complaint does not comply with the Rule 8 standard because it is a "lengthy document" naming ten defendants and several claims, does not include specifically numbered paragraphs, and asserts allegations that span over two years. (Doc. 15, at 1). They further argue that the complaint "includes a few averments that have several paragraphs each, naming several defendants and non-defendants within a multitude of overlapping facts relating to each claim." (Doc. 15, at 5). The lack of clarity and Scott's varying reliance on the Settlement Agreement in a different action before the Court makes it difficult for Defendants to discern the extent to which his claims are based on that Agreement. (Doc. 15, at 5). Finally, Defendants argue that "[t]o the extent that [Scott] is directly challenging compliance with the terms" of the Settlement Agreement, "a motion to seek

specific performance is the appropriate procedural mechanisms to do so, and not via this new lawsuit." (Doc. 15, at 5).

A. LEGAL STANDARDS

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (alteration in original) (internal quotation marks omitted); *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. If a complaint fails to comply with the threshold pleading requirements of Rule 8, a defendant may move for its dismissal under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Sally-Harriet v. Northern Children Svcs.*, No.CV 17-4695, 2019 WL 1384275, at *3 (E.D. Pa. Mar. 26, 2019) ("A motion under Rule 12(b)(6) tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).").

As already noted, *supra*, in considering whether a complaint fails to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6), the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan*, 20 F.3d at 1261. However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (internal citations omitted). Additionally, a court need not assume that a plaintiff can prove facts that

the plaintiff has not alleged. *Assoc'd. Gen. Contractors of Cal. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Scott asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

B. ANALYSIS

Upon considering the parties' arguments, the Court finds that Scott's complaint substantially complies with Rule 8. The complaint contains 12 pages of allegations organized under six headings indicating Scott's theories of liability, and under each heading Scott has, for the most part, set forth the allegations into coherent paragraphs. The Court was, without much difficulty, able to discern the crux of Scott's allegations, including that he was wrongfully denied the right to fast during Ramadan, that he was denied a diet consistent with his religion, that the sign-up form for observing Ramadan both unfairly infringes on his right to exercise his religion and discriminates on the base of race, and that Defendants placed him in the RHU in retaliation for his complaints and grievances.[4]

It therefore cannot be said that "the complaint [is] so long and confusing as to *overwhelm* [Defendants'] ability to understand or to mount a response." *See Jordan v. Wetzel*, No. CV 16-307, 2019 WL 1382512, at *2 (W.D. Pa. Mar. 27, 2019) (emphasis added) (internal quotation marks omitted). Further, while some of Scott's claims are not a model of clarity, "it is an abuse of discretion to dismiss an entire complaint if it contains some claims

---

[4] That these are discernable claims is evidenced in the decisions of the Third Circuit, including *Mincy v. Deparlos*, 497 F. App'x 234 (3d Cir. 2012), where the Third Circuit affirmed, on *summary judgment*, judgment in favor of defendants on claims, e.g., that the plaintiff was denied food in accordance with a religious diet, the plaintiff was denied requests that prison medical staff provide medications according to an altered schedule to accommodate religious beliefs, and that different implementations of sign-up forms did not violate equal protection. While *Mincy* is distinguishable on its facts, the claims asserted therein were, at the least, cognizable and understandable to the district and appellate courts there.

that satisfy Rule 8." *Garrett v. Wexford Health*, 938 F.3d 69, 91 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 1611 (2020). While the Court observes deficiencies in the complaint, the allegations are sufficient to put Defendants on notice of Scott's claims. The complaint may "contain[] repetitious and irrelevant matter," but it is error to dismiss such a complaint where the "disposable husk" surrounds "a core of proper pleading." *Garrett*, 938 F.3d at 94 (internal quotation marks omitted).

Accordingly, Defendants' motion to dismiss (Doc. 14) is **DENIED**, without prejudice to the Defendants filing a renewed motion to dismiss to address substantive deficiencies, per their request in their brief in support. (Doc. 15, at n. 1).

An appropriate order will follow.

BY THE COURT:

Dated: June 15, 2020

*s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**