## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMAL SCOTT,

                Plaintiff,

    v.

KEVIN KAUFFMAN, et al,

                Defendants.

CIVIL ACTION NO. 3:19-CV-00695

(MEHALCHICK, M.J.)[1]

### MEMORANDUM

Plaintiff Jamal Scott, an inmate currently housed at the State Correctional Institution at Huntingdon (SCI-Huntingdon), commenced this action *pro se* on April 24, 2019, asserting violations of his federal civil rights under 42 U.S.C. § 1983 for which he seeks injunctive and monetary relief, as well as violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA). (Doc. 1). He asserts causes of action against ten defendants: (1) the Pennsylvania Department of Corrections (DOC); (2) SCI-Huntingdon staff including Facility Manager Kevin Kauffman, Facility Chaplaincy Program Director Mr. Wireman, Corrections Classification Program Manager Ms. Sipple, Deputy Superintendent Scott Walters, Facility Chaplain Bilgan Erdogan, and Corrections Officers Hawn and Mills; (3) John Wetzel, the Secretary of Corrections; and (4) Ulrich H. Klem, DOC's Religion Volunteer and Recreational Services Program Administrator (collectively, "Defendants"). (Doc. 1, at 1-2).

On November 13, 2019, Defendants moved to dismiss Scott's complaint pursuant to

---

[1] In November 2019, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the undersigned's jurisdiction to adjudicate all pretrial and trial proceedings relating to this action. (Doc. 16).

Rule 8 of the Federal Rules of Civil Procedure. (Doc. 14). The Court denied this motion without prejudice to Defendants refiling a motion to dismiss to address any substantive deficiencies. (Doc. 18; Doc. 19). Defendants filed such motion on June 29, 2020. (Doc. 23). Both sides have briefed this motion and it is ripe for disposition. (Doc. 24; Doc. 25).

For the reasons discussed herein, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND[2]

Scott's allegations are divided into six parts, each of which is addressed below.

### 1.   First Set of Allegations: "Denial of Free Exercise of Religion under Section 1983 and First Amendment's Free Exercise Clause (Wireman, Sipple, Klemm, Kauffman, Bilgan)"

Scott is a practicing Sunni Muslim and a member of the Ahlus-Sunnah Muslim Community (ASMC) at SCI-Huntingdon. (Doc. 1, at 1). This community was created as a result of a settlement agreement Scott reached with defendants in *Jamal Scott v. Bilgan Erdogan, et al.*, No. 12-CV-2041 ("Settlement Agreement"). (Doc. 1, at 1). In March 2017, Scott had submitted an "Eid Proposal" to Superintendent J. Thomas and Defendants Sipple and Wireman, none of whom responded.[3] (Doc. 1, at 3). The next month, Scott submitted an

---

[2] The Court's recitation of facts is drawn from Scott's complaint, the allegations of which the Court must presume are true for purposes of Defendants' motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

[3] Scott appears to use "Eid" and "'Id" interchangeably, explaining that the religion of Islam has two 'Id ceremonies. (Doc. 1, at 3). One occurs the day after Ramadan is complete and the other occurs during the Hajj, a pilgrimage, on the day of the sacrifice.

The first 'Id is called 'Idul-Fitr. Once it is determined that the fast of Ramadan is complete, the very next day around mid-morning the Muslims gather for the prayer. Prior to praying, it is recommended reciting takbirul-'Id, afterwords the Muslims perform the 'Id prayer in congregation. After the prayer, the person

"Ahlus-Sunnah Muslim Community's Eid Proposal" to Defendant Kauffman, who responded that the proposal was under review. (Doc. 1, at 3-4). In June 2017, Defendant Sipple responded, denying Scott's Eid Proposal. (Doc. 1, at 4).

One year later, in March 2018, Scott wrote to Defendants Kauffman and Wireman asking for, "among other things, 'Id Holy day observances," to which he was told to submit a Religious Accommodation Request Form ("RAR Form"). (Doc. 1, at 4). Scott alleges that this advice was "invalid" because under DC-ADM 819 the RAR Form is for requests for non-grooming-related religious accommodations not already approved, whereas "the DOC has already approved Faith Group Ceremonial Meals for the celebration of major religious holy days in its DC-ADM 819." (Doc. 1, at 4).

In April 2018, Scott intended to perform his obligatory month of fasting for Ramadan. (Doc. 1, at 1-2). Defendant Wireman distributed a "2018 Ramadan Sign-Up Form," which Scott signed and submitted. (Doc. 1, at 3). Wireman subsequently returned the sign-up form to Scott along with a letter from Defendant Klemm because Scott had not checked any of the boxes on the form. (Doc. 1, at 3). Scott checked the boxes where indicated and resubmitted the form along with a "request slip." (Doc. 1, at 3). Wireman again returned the sign-up form, indicating, in red ink, "NEED SIGNATURE ON FORM!" (Doc. 1, at 3). Wireman insisted that Scott sign the form before being permitted to fast for Ramadan. (Doc. 1, at 3).

In connection with these allegations, Scott also asserts that "Central Office constructed a form with questions seeking to gauge the quality of the religious services that each Faith

---

that led the prayer would give the sermon. Once the sermon is complete, the people would then eat the 'Id meal.

(Doc. 1, at 3).

Group is provided in the prisons." (Doc. 1, at 4).  Two ASMC inmates filled out forms in a 2017 "Religious Audit interview," and Scott and another ASCM inmate filled out the same forms in 2018 – this process was overseen by the Facility Chaplaincy Program Director (FCPD) of SCI-Fayette. (Doc. 1, at 4).

> **2.  Second Set of Allegations: "Violation of Rights of Equal Protection Section 1983, and Fourth and Fifth Amendment Equal Protection Clause Without Due Process of Law in Implementation of Racist Ramadan Sign-Up Form That Does Not Further Any Legitimate Penal Interest and Creates a Substantial Burden under [the Religious Land Use and Institutionalized Persons Act (RLUIPA)] (Mr. Klemm, Mr. Wireman, Mr. Erdogan)"**

Scott next alleges that the sign-up form required to participate in Ramadan serves no legitimate purpose and unfairly targets Muslims, who are predominantly black inmates. (Doc. 1, at 5). Other religious ceremonies, including those for Rosh Hashana, Yom Kippur, Sukkot, and Channukah, are observed and celebrated without a pre-requisite sign up form. (Doc. 1, at 5). Furthermore, the sign-up form requires the participant to agree to only a 30-day fast, "whereas Islam has more than the 30 day fasting period." (Doc. 1, at 5-6). According to Scott, the prison accommodates four Jewish fasts. (Doc. 1, at 6). Finally, Scott alleges that during the 2018 Ramadan the prison only allowed him to take his allergy medicine at night in violation of his fasting. (Doc. 1, at 5).

> **3.  Third Set of Allegations: "Denial of Free Exercise of Religion Under Section 1983 and First Amendment's Free Exercise Clause Without Due Process Under Section 1983 and Fourteenth Amendment's Due Process Clause (Wireman, Kauffman, Klemm, Mr. Erdogan)"**

In his third set of allegations, Scott alleges that because of DOC's policy of prohibiting an inmate from taking food from the kitchen but for one piece of fruit, he was unable to fast in a healthy manner during Ramadan. (Doc. 1, at 6). He further alleges that Defendant Kauffman signed off on but never implemented the Settlement Agreement, and that

- 4 -

Defendants Kauffman, Wireman, Sipple, and Walters feigned attempts to comply with the Settlement Agreement until the "time ran for the agreement to become binding." (Doc. 1, at 6). In March 2018, Scott wrote Defendants Wireman and Kauffman and filed a grievance complaining about "our lack of holy day observances, religious activities, volunteers, lack of classes, and literature, and having our own oil." (Doc. 1, at 6).

### 4. Fourth Set of Allegations: "Retaliatory Cell Search"

In June 2018, after Scott's "numerous request[s] and filing of grievances to [Defendants Kauffman, Wireman, and Walters," two corrections officers searched his cell. (Doc. 1, at 7). The officers dumped Scott's property, mixed his religious property with other belongings, placed Scott's Quran on the top of the cell's toilet, ripped open a package of food, threw his clean clothes on the trash, and disputed Scott's ownership of property that was clearly identified as being owned by Scott. (Doc. 1, at 7). Scott told Defendant Mills, who was walking through that tier, about the other officers' conduct, and Mills told Scott to file a grievance, which he did. (Doc. 1, at 7).

### 5. Fifth Set of Allegations: "Retaliatory Placement in the Restricted Housing Unit (RHU) (Mr. Walters, Mr. Kauffman, Mr. Wireman)"

In January 2019,[4] Scott gave Defendants Wireman, Kauffman, Klem, Walters, Bilgan, and Connie Green a list of "all of the instances the administration was not complying with the settlement agreement, and violating administrative policy, and Plaintiff's rights to practice his religion." (Doc. 1, at 8). On January 7, 2019, Defendant Walters became irate and angry

---

[4] Scott dates this set of allegations as beginning in 2018, not 2019. (Doc. 1, at 8). However, Scott alleges that he was placed back in the RHU "two and a half weeks" after first being released from the RHU, on March 3, 2019, and that he was in the RHU on February 1, 2019. (Doc. 1, at 13). Further, a February 2019 initial-placement-in-RHU date fits with the general timeline set forth by Scott in his complaint. (*See* Doc. 1, at 7-9).

at Scott. (Doc. 1, at 8). He asked Scott, in part, whether there was a prison Scott wished to be transferred to where "other inmates believed as he did." (Doc. 1, at 8). Walters then insulted the ASMC members and indicated he was "upset about the reference to women walking pas[t] with the door open distracting the ASMC service." (Doc. 1, at 8).

On February 1, 2019, Scott was denied his noon meal and then taken to the Restricted Housing Unit (RHU) under administrative custody. (Doc. 1, at 8). There, RHU staff took items of Scott's property without a confiscation slip, and left Scott with a box containing only some of his property for which he was given a confiscation slip. (Doc. 1, at 8). Scott was then ordered to have that box of property sent out or destroyed, even though he was promised that he would be allowed to keep the box of property. (Doc. 1, at 8). During this time of RHU confinement, Scott was denied, *inter alia*, a shower and the right to observe prayer services, only to be released without a misconduct report ever being issued. (Doc. 1, at 8). He alleges that he was held in the RHU for weeks beyond what is permitted under administrative custody due to no cell being available, however a corrections officer later told him that a cell had been open for days. (Doc. 1, at 8-9).

Scott was released from RHU and administrative custody only to be placed back into the RHU several weeks later, in March 2019, without any misconduct report having been issued. (Doc. 1, at 9). During his second stint in the RHU, he was denied his allergy medication, he was wrongfully directed to throw away some of his property, and some of his property was missing or destroyed, including a prayer schedule. (Doc. 1, at 9).

6. **Sixth Set of Allegations: "Violation of Rights by Establishment of Religion under Section 1983 and First Amendment's Establishment Clause. Conspiracy to Establish a Religious Practice under Section 1983 and First Amendment's Establishment Clause (Kauffman, Klemm, Wireman, Sipple, Erdogan, Walters, Wetzel)"**

Scott's final set of allegations consists of a range of claims that Defendants intentionally impeded and frustrated the ASMC community and Scott from observing their religious holy days and practicing their religion generally. The allegations appear to take place during late 2018 through 2019, although Scott does not specifically indicate when all the alleged conduct occurred. (Doc. 1, at 10-19).

Scott alleges, among other things, that (1) Defendants "promoted and fostered the prison's Jumuah service led by prison staff instead of the ASMC's Friday prayer service;" (2) Defendants placed ASMC service in a distracting area of the prison and demanded ID cards; (3) the ASMC services are not called over the loudspeaker, which frustrates new inmates' ability to learn about the ASMC services; (4) the rug provided to Scott is too thick and is "not a rug meant to pray on"; (5) Defendant Wireman is a consistent distraction, refuses to sit in the back during the prayer service, writes notes from the front of the group, and leaves the door open to a busy corridor where staff talk to one another; (6) Defendants Wireman, Erdogan, and Klem have not attempted to recruit a volunteer religious teacher or Imam for the ASMC; (7) Defendants Wireman and Erdogan refuse to provide religious reading material to the ASMC; (8) there is no water source in the ASMC services room, which is essential for prayer, and the room is always dirty and not set up; and (9) Defendant Erdogan "preached the message that[] the creation of the ASMC was an act of deviation from the 'community.'"" (Doc. 1, at 10-13).

### 7. <u>Assertion of RLUIPA Violations and Demand for Relief</u>

At the end of his complaint, Scott asserts that Defendants placed a substantial burden on his religious exercise of the 2018 Ramadan fast by enforcing "food-control regulations without first considering whether the purpose of those regulations could be accomplished by

other means that would be less burdensome to the religious exercise." (Doc. 1, at 13). He further asserts that Defendants substantially burdened his religious exercise on two 'Id celebrations without considering other, less-burdensome means. (Doc. 1, at 13). Finally, he asserts that due to these RLUIPA violations, he has suffered injuries as alleged in his complaint. (Doc. 1, at 13).

For relief, Scott seeks the following: (1) declaratory relief "by finding that the Defendants violated his constitutional and statutory rights;" (2) injunctive relief "by enjoining DOC to provide accommodations to enable [him] to observe the fast of Ramadan henceforth;" (3) compensatory damages; (4) punitive damages; and (5) litigation costs. (Doc. 1, at 14).

## II.   DISCUSSION

Defendants assert a variety of reasons for why Scott's claims should be dismissed. (Doc. 24). They submit that Defendants Wetzel, Hawn, and Mills should be dismissed from this action because they are not alleged to be personally involved with any wrongdoing. (Doc. 24, at 8-9). Additionally, all claims for monetary damages brought against Defendants in their official capacities should be dismissed because such claims are barred under the 11th Amendment. (Doc. 24, at 9-11). Scott's RLUIPA claims, Defendants assert, should be dismissed because his allegations do not rise to the level of an RLUIPA violation. (Doc. 24, at 11-12). Scott's First Amendment claims arising from being forced to complete a form before performing the 2018 Ramadan fast should be dismissed because "such a requirement does not place a substantial burden on [Scott's] religious beliefs." (Doc. 24, at 12-14). Scott's equal protection claims should be dismissed because Scott's request for a month-long fasting accommodation is not provided to followers of other religions. (Doc. 24, at 14-16). Finally,

Scott's retaliation claims should be dismissed, according to Defendants, because Scott does not allege a proximate causal link between his protected conduct and the alleged retaliatory acts. (Doc. 24, at 16-17).[5]

A. LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of

---

[5] Scott clarifies in his Brief in Opposition that he does not intend to bring a breach of contract claim arising from the prior settlement agreement. (Doc. 25, at 4). As such, Defendants' motion as it pertains to this claim will not be addressed. (Doc. 24, at 17-20).

a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan*, 20 F.3d at 1261. This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d

- 10 -

at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Twombly*, 550 U.S. at 545).

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

Scott asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

- 11 -

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

### B. LIABILITY OF DEFENDANTS IN THEIR OFFICIAL CAPACITIES

Defendants aver that Scott's claims for compensatory and punitive monetary damages should be dismissed insofar as they are brought against Defendants in their official capacities. (Doc. 24, at 9-11). Such claims are barred by the Eleventh Amendment, according to Defendants. (Doc. 24, at 9-11). They also state that since the Department of Corrections cannot be considered a "person" under the Eleventh Amendment, any claim for monetary damages should automatically be dismissed as to it. (Doc. 24, at 11).

"A threshold question in § 1983 cases is whether the defendant qualifies as a 'person' subject to suit under § 1983." *O'Neal v. Bedford Cty.*, 2017 WL 244866, at *3 (W.D. Pa. 2017). Individuals sued in their official capacity are not considered persons for the purposes of § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."). Scott does not state whether he sues the Defendants in their official or individual capacities. (Doc. 1). Section 1983 does not provide a remedy of monetary damages against the Defendants in their official capacities, therefore Defendants' motion to dismiss such claims is **GRANTED**. *See Will*, 491 U.S. at 71. Since Defendant DOC can only be sued in an official capacity, Defendants' request that all monetary damages be barred as to it is **GRANTED**. (Doc. 24, at 11); *see*

*SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) ("[A]s a state agency and the prison it administers, the Department of Corrections and SCI-Albion are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."). As for claims for monetary damages, surviving are Scott's claims against the individual Defendants sued in their individual capacities. (Doc. 1).

    C. THE PERSONAL INVOLVEMENT OF DEFENDANTS WETZEL, HAWN, AND MILLS

    Defendants assert that Defendants Wetzel, Hawn, and Mills should be dismissed from this suit because Scott does not allege they were personally involved in wrongdoing. (Doc. 24, at 8-9). Wetzel's alleged conduct is too general to give rise to liability, and vicarious liability is inapplicable according to Defendants. (Doc. 24, at 9). "Hawn and Mills are not connected to any wrong-doing throughout the complaint. The only mention of Defendant Mills is within the retaliatory search claim, and Plaintiff only states that Mills told him to file a grievance. Such conduct does not indicate any wrong-doing at all." (Doc. 24, at 9).

    Scott responds with specific allegations involving Wetzel, Hawn, and Mills. (Doc. 25, at 5). He states that he provided Wetzel a letter on January 5, 2019, describing constitutional violations taking place at SCI-Huntingdon and that Wetzel failed to respond. (Doc. 25, at 5). Hawn and Mills, employees at SCI-Huntingdon, worked to "disrupt and cause an end to the Friday prayer service and classes in favor of the prison's Islamic services led by Bilgan Erdogan." (Doc. 25, at 5). Scott submits that the Complaint shows Mills collected inmates' ID cards before they attended service and that he "implemented an improm[p]tu policy of all has to stay or go together [after the prayer service]." (Doc. 25, at 5-6). Hawn, according to Scott, walked among the inmates active in prayer and read an inmate's religious notes. (Doc.

25, at 6). The Complaint reflects Scott's assertions as to Hawn and Mills. (Doc. 1, at 10-12).[6]

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir.2007) (internal citations omitted). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir.1988).

Scott alleges that Hawn and Mills were personally involved in wrongdoing. (Doc. 1, at 10-12). Scott claims that Mills personally collected inmates' ID cards prior to them attending service and that this deterred at least some inmates from returning. (Doc. 1, at 10). He also alleges that Mills forced all inmates to leave service at the same time, preventing some from remaining "to watch DVD's or listen to the CD's or hold a class." (Doc. 1, at 11-12). Scott alleges that Hawn was personally involved in wrongdoing by walking among the inmates engaged in prayer and reading their religious notes. (Doc. 1, at 11). These are allegations of participation and are made with sufficient particularity. *See Rode,* 845 F.2d at 1207. As such, Defendants' Motion to Dismiss for lack of personal involvement is **DENIED** as to Hawn and Mills and **GRANTED** as to Wetzel. (Doc. 24, at 8-9).

---

[6] The Complaint bears no mention of Defendant Wetzel's conduct. (Doc. 1). The January 2019 letter was allegedly written to "Mr. Wireman, Mr. Kauffman, Connie Green, Mr. Klemm, Mr. Walters, and Mr. Bilgan." (Doc. 1, at 8). Because Wetzel is not mentioned in the material allegations of the Complaint, he shall be **DISMISSED** from this action. *See United States ex rel. Tyrrell v. Speaker,* 471 F.2d 1197 (3d Cir. 1973) (dismissing four defendants from action who, though named in the complaint, had no allegations as to them).

D.  Scott's Claims Brought Pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA")[7]

Defendants submit that Scott fails to plead facts giving rise to an RLUIPA violation. (Doc. 24, at 11). They state that Scott's request for relief pursuant to the RLUIPA are conclusory and too general. (Doc. 24, at 12). His Complaint "does not connect any facts to support [his] general claims." (Doc. 24, at 12). Scott, while asking for permission to amend the Complaint to better articulate his RLUIPA claims, responds with a description of the issues (confiscation of religious books, denial of fasting accommodations, interference with religious ceremonies and celebrations) giving rise to his RLUIPA claims. (Doc. 25, at 9). However, Scott's Complaint identifies only the denial of fasting accommodations and interference with religious ceremonies and celebrations, specifically the two 'Id celebrations, as giving rise to RLUIPA violations. (Doc. 1, at 13).

Under the RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person ... is in furtherance of a compelling governmental interest; and ... is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A).

Although Congress intended the RLUIPA to be construed "in favor of a broad

---

[7] The RLUIPA allows only for injunctive and declaratory relief. *Small v. Wetzel*, 528 F. App'x 202, 208 (3d Cir. 2013).

protection of religious exercise," 42 U.S.C. § 2000cc-3(g), it also "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (quoting the RLUIPA's legislative history). The Supreme Court therefore reasons that when "requests for religious accommodation become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the [prison is] free to resist the imposition." *Cutter*, 544 U.S. at 726. Finally, the "RLUIPA confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Cutter*, 544 U.S. at 724.

The Third Circuit has established a two-step burden-shifting analysis to evaluate the merits of an RLUIPA claim. First, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007). A burden on religious practice is substantial where:

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; [or] 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

> *Washington*, 497 F.3d at 280.

Once the inmate satisfies his burden of showing that his religious practice has been substantially burdened, the defendant may then rebut by showing "that the policy is in furtherance of a compelling governmental interest and is the least restrictive means of

furthering this interest." *Washington*, 497 F.3d at 283.

The first of Scott's RLUIPA claims arises from "DOC and its employees plac[ing] a substantial burden on Plaintiff's religious exercise of the 2018 Ramadan fast, by enforcing food-control regulations…" (Doc. 1, at 13). These burdens are detailed elsewhere in the Complaint. Scott indicates that he was unable to fast in 2018 because he was forced to purchase food from commissary and "the prison policy forbids taking more than one piece of fruit from the kitchen." (Doc. 1, at 3). Scott also indicates that he was not provided the opportunity to obtain his allergy medication at times consistent with his fast. (Doc. 1, at 5). Finally, Scott alleges that the sign-up form which inmates were required to sign prior to engaging in the Ramadan fast forced them to agree to the DOC only accommodating that 30-day fast despite there being additional fasting periods in the Islam religion. (Doc. 1, at 5-6).

The Third Circuit has held that inmates have a constitutional right "not to be forced into a Hobson's choice of either eating food items which offend one's religious beliefs, or eating very little or not at all." *Norwood v. Strada*, 249 F. App'x 269, 272 (3d Cir. 2007). Therefore, to be forced to make such choice is substantially burdensome. *Norwood*, 249 F. App'x at 271-72. In *Makin v. Colorado Dept. of Corrections,* 183 F.3d 1205 (10th Cir. 1999), a case cited by the Third Circuit in *Norwood*, an inmate who was housed in punitive segregation because he was caught with illegal contraband was unable to receive the facility's pre and post-sundown meals provided during Ramadan. *Makin*, 183 F.3d at 1208-09. He maintained his fast by storing food delivered during the day and eating it in accord with the fast, "although he contended that it was extremely difficult to do that and that, as a result, he was unable to enjoy the full spiritual experience of Ramadan." *Makin,* 183 F.3d at 1208-09. The court in *Makin* upheld the district court's determination that "the denial of special meal

- 17 -

accommodations during Ramadan violated Mr. Makin's First Amendment rights." *Makin*, 183 F.3d at 1211, 1214. The Third Circuit used this case to illustrate the existence of a substantial burden on inmates' religion in accompaniment with a discussion of the RLUIPA. *Norwood*, 249 F. App'x at 271-72.

Like the plaintiff in *Makin*, Scott seeks accommodations consistent with the dictates of Ramadan. (Doc. 1, at 3, 5-6). By not providing special meal accommodations during the Ramadan fast, including access to his allergy medication, Scott sufficiently alleges that the Department of Corrections substantially burdens his practice of religion. *See Makin*, 183 F.3d at 1211, 1214. Scott's allegation that to be permitted to engage in the Ramadan fast he was required to agree to no other fasting accommodations – despite the existence of additional fasts in his religion – also constitutes a substantial burden on his practice of religion. *See Washington*, 497 F.3d at 280 (a burden on religious practice is substantial where … "the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs."). Scott's factual allegations of "food-control regulations" substantially burdening his 2018 Ramadan fast are sufficient to support an RLUIPA claim.

The second of Scott's RLUIPA claims arises from his claim that he was substantially burdened in his religious exercise of the two 'Id celebrations. (Doc. 1, at 13). Scott explains that Muslims conduct 'Id ceremonies the day after the end of Ramadan as well as during Hajj, the day of the sacrifice. (Doc. 1, at 3). These ceremonies include a gathering for a special 'Id prayer, followed by a sermon and an 'Id meal. (Doc. 1, at 3). Scott alleges that in March and April 2017 he submitted Eid proposals to Defendants Sipple, Kauffman, and Wireman (along with non-party J. Thomas). (Doc. 1, at 3-4). In June 2017, he was informed by Sipple that his proposal was denied. (Doc. 1, at 4). The next year, Scott again sought 'Id observances through

- 18 -

DC-135A request forms and was told to submit a Religious Accommodation Request Form. (Doc. 1, at 4). Scott states that DOC policy calls for this form to be used only for religious accommodation requests not already approved in policy, and since "[t]he DOC has already approved Faith Group Ceremonial Meals for the celebration of major religious holy days in its DC-ADM 819," it would be invalid under DOC policy to submit an accommodation request. (Doc. 1, at 4).

The Third Circuit has held that denying an inmate the opportunity to participate in the Eid meals when the meals are "central to the practice of his religion" constitutes a substantial burden and gives rise to an RLUIPA claim. *Banks v. Secretary Pennsylvania Dept. of Corr.*, 601 F. App'x 101, 104-06 (3d Cir. 2015). Scott describes the Eid meals as integral to Islam and on multiple occasions submitted Eid proposals to DOC personnel. (Doc. 1, at 3-4). He alleges that Defendants denied his Eid proposals and request for observance. (Doc. 1, at 3-4). On the face of the Complaint, these allegations state a plausible claim for relief. *See Banks*, 601 F. App'x at 104-06.

Scott's Complaint contains allegations which could plausibly give rise to RLUIPA violations. (Doc. 1). Thus, Defendants' Motion to Dismiss is **DENIED** as to Scott's RLUIPA claims. (Doc. 23; Doc. 24, at 11-12).

### E. Scott's First Amendment Claims Arising from the 2018 Ramadan Fasting Form

According to Defendants, the requirement that Scott must properly complete and sign a form before participating in the Ramadan fast does not place a substantial burden on his religious beliefs. (Doc. 24, at 12-14). They assert that there are numerous changes that must be coordinated when a prisoner participates in Ramadan, including meal times, medication

- 19 -

times, and meal locations, and that it is reasonable for the Defendants to require the completion of a form. (Doc. 24, at 14). Scott's First Amendment rights are not violated by such a requirement because the requirement is not more than *de minimis* in nature. (Doc. 24, at 14).

Scott responds that in addition to the form requirement, his Complaint states that he was forced to purchase food from commissary and that this violates his First Amendment rights. (Doc. 25, at 3). Without dietary accommodations, according to Scott, he was unable to fast. (Doc. 25, at 3). Additionally, Scott asserts that there was no rationale for the form requirement. (Doc. 25, at 4).

This ground for dismissal can be disposed of in short order. Though Scott indicates in his Brief in Opposition that he believes the sign-up form to be unlawful and that he may not have signed it, his Complaint is clear that he did sign the form and checked all the boxes. (Doc. 1, at 3) ("FCPD Mr. Wireman passed out these '2018 Ramadan Sign-Up Form.' I immediately signed my name, institution identification number, block location, and institution, and turned the form in."); (*see* Doc. 25, at 4). Scott alleges that he was denied the opportunity to participate in the 2018 Ramadan fast despite signing and completing the Ramadan Sign-Up form.[8] (Doc. 1, at 3). When a complaint is inconsistent with a brief, the complaint controls. *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)). Therefore, Defendants' motion to dismiss "Plaintiff's First Amendment claims

---

[8] Defendant Wireman allegedly demanded a signature from Scott despite the fact that he had already signed the form. (Doc. 1, at 3).

relating to Ramadan in 2018 based on the premise that he did not properly complete the sign-up form" misses the point. (Doc. 24, at 12-14). Plaintiff alleges that he did complete, sign, and submit the sign-up form and that he was still denied Ramadan accommodations. (Doc. 1, at 3). Defendants do not address this allegation, nor do they address Scott's First Amendment claims arising from him being forced to purchase food from commissary during the Ramadan fast, being forced to sign away rights to additional fasting, and Defendants' denials of his Eid proposals in 2017 and 2018.[9] (Doc. 1, at 3-4, 6-7; Doc. 24). Defendants' Motion to Dismiss is **DENIED** as to Scott's claims under the First Amendment.[10] (Doc. 23; Doc. 24).

### F.  SCOTT'S EQUAL PROTECTION CLAIM

Defendants aver that Scott's equal protection claims should be dismissed because the demands of Scott's religion are not equaled by other religious groups. (Doc. 24, at 14-16). They state that Scott's equal protection claim arises from his allegation that "he was required to sign a form for Ramadan but other religions are not required to do the same." (Doc. 24, at 16). Scott does not assert that other religions have a similar lengthy one-month fast

---

[9] The Court notes that Scott alleges that he was forced to agree to the DOC's accommodation of merely one fast in the Equal Protection section of his Complaint. (Doc. 1, at 2). Since his Complaint must be read liberally, and because he explicitly connects this allegation to his First Amendment rights, this allegation shall be considered grounds for a First Amendment free exercise claim. *See Estelle,* 429 U.S. at 106 (a *pro se* complaint must be liberally construed).

[10] Even if Defendants were to challenge Scott's First Amendment claims as stated in his Complaint on account of reasonable penological interest, the Motion would most likely fail because, unless alleged in the complaint, courts refrain from considering the penological interest at the motion to dismiss stage of proceedings. *See Palmore v. Hornberger,* 813 F. App'x 68, 71 (3d Cir. 2020) ("But when ruling on a motion to dismiss, a district court must consider only the complaint and its attached documents, and, for that reason, '[i]t makes little sense to apply [the burden-shifting framework] at the pleading stage[.]'") (citations omitted) (quoting *Thomas v. Eby,* 481 F.3d 434, 442 (6th Cir. 2007)); *Holbrook v. Jellen,* 2014 WL 1944644, at *10 (M.D. Pa. 2014); *Wilson v. Wetzel,* 2013 WL 4812497, at *8 (M.D. Pa. 2013).

requirement, according to Defendants. (Doc. 24, at 16). Since he does not allege the existence of similarly situated conditions, his equal protection claim should be dismissed. (Doc. 24, at 16). Scott states that he need not allege identical circumstances and practices, only similar ones. (Doc. 25, at 2). Other religions enjoy meals and fasts without a sign-up form requirement, therefore Muslims are being unfairly targeted by this requirement. (Doc. 25, at 1-3).

The Equal Protection Clause of the Fourteenth Amendment protects prisoners from different treatment on account of religion. *See Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003). When stating an equal protection claim, a plaintiff must first show that he has been treated differently from similarly situated individuals. *See City of Cleburne, Tex. v. Cleburne Living Center,* 473 U.S. 432, 439 (1985). A plaintiff may bring an equal protection claim under two legal theories. *Margetta v. Ferguson*, No. 1:17cv0037, 2018 WL 1430936, *3 (M.D. Pa. March 22, 2018). In a traditional case, an inmate asserts a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016). In a "class of one" claim, a plaintiff does not allege discrimination based on membership in a protected class or particular group, but rather, asserts a defendant treated him differently from others similarly situated for arbitrary or irrational reasons. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips v. City of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008). Here, Scott asserts a "traditional" equal protection claim: that he and others were treated differently from similarly situated individuals based on their Muslim religion. (Doc. 1, at 5-6).

The Third Circuit has held that a complaint which "outlines the Ramadan Policy in

great detail, alleges that Jewish inmates also have holy days of fasting and feasting, and charges that Jewish inmates are not required to sign forms like the Guidelines in order to participate in those holy days" sufficiently states an equal protection claim. *Small*, 528 F. App'x 202, 210 (3d Cir. 2013). In the Complaint, Scott details the sign-up sheet policy, including what information is required, and alleges that "[t]his prison offers the holy days of Rosh Hashana, Yom Kippur, Sukkot, and Channukah which are marked by special observances, and Passover is celebrated with an annual Passover Seder, as well as The Day of Atonement and four other fast days without the prerequisite sign up form." (Doc. 1, at 5). He additionally states that Muslims are required to agree to one 30-day fast, while the prison accommodates four Jewish fasts. (Doc. 1, at 5-6). As in *Small*, these allegations of Defendants accommodating the Jewish religion's holy days without the forms Muslims are required to complete are sufficient to state an equal protection claim. *See Small*, 528 F. App'x at 210. Defendants' Motion to Dismiss is **DENIED** as to Scott's equal protection claims. (Doc. 23; Doc. 24, at 14-16).

### G. SCOTT'S RETALIATION CLAIMS

Defendants submit that Scott's retaliation claims should be dismissed because he does not identify a causal nexus between the alleged retaliatory acts and the protected conduct, as required by law. (Doc. 24, at 16-17). They state that since Scott does not name the corrections officers who allegedly committed the retaliatory act of searching his cell, there is no way he can allege that they were motivated by his protected conduct. (Doc. 24, at 17). They also aver that Scott's placement in the RHU, as alleged, was too remote in time from his protected conduct (listing settlement deficiencies) to imply causation. (Doc. 24, at 17). In response, Scott restates his allegations that his cell was searched three months after he submitted request

slips, and that he was sent to RHU less than one month after he delivered the letter outlining the settlement deficiencies. (Doc. 25, at 7-8).

A prisoner alleging First Amendment retaliation must satisfy three elements: (1) that he engaged in a constitutionally protected activity, *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001); (2) that he suffered some adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000) (citing *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000)); and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him. *Rauser,* 241 F.3d at 333 (quoting *Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). If a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. *Rauser,* 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

"To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997); *Woodson v. Scott Paper Co.*, 109 F.3d

- 24 -

913, 920–21 (3d Cir. 1997) ). "Courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks, months or years separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation." *Victor v. Huber*, No. 3:12-CV-282, 2012 WL 2564892, at *9 (M.D. Pa. Feb. 28, 2012) (citing *Killen v. N.W. Human Servs., Inc.*, No. 06–4100, 2007 WL 2684541, at *8 (E.D. Pa. Sept. 7, 2007) (seventeen days insufficient to establish causation); *Smith v. ABF Freight Sys., Inc.*, No. 04–2231, 2007 WL 3231969, at *11 (M.D. Pa. Oct. 29, 2007) (one and one-half months insufficient to establish causation); *Mar v. City of McKeesport*, No. 05–19, 2007 WL 2769718, at *4 (W.D. Pa. Sept. 20, 2007) (three months insufficient to establish causation); *Fischer v. Transue*, No. 04–2756, 2008 WL 3981521, *10 (M.D. Pa. Aug. 22, 2008) (three weeks insufficient to establish causation)). In the absence of such proof, a plaintiff must show that the "evidence gleaned from the record as a whole" provides an inference of causation. *DeFlaminis*, 480 F.3d at 267 (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) ). Thus, the temporal proximity of a retaliatory act to the protected activity is probative, but not dispositive, of causation.

Scott's Complaint contains no allegations that could plausibly give rise to an inference that the Defendants' actions were motivated by Scott's protected conduct. (Doc. 1, at 7-9). Plaintiff alleges that he wrote to Defendants in early January 2019 – he clarifies in his Brief in Opposition that it was January 5, 2019 – the ways the administration was not complying with the settlement agreement and was violating his rights. (Doc. 1, at 8; Doc. 25, at 8). On February 1, 2019, Plaintiff was placed in RHU.[11] (Doc. 1, at 8). There is no allegation of "a

---

[11] The Court reiterates that despite Scott dating these allegations "2018," the general timeline set forth by Scott in his Complaint indicates they actually took place in 2019, and in

pattern of antagonism" between January 7, 2018, and February 1, 2019, and the length of time between those dates is not sufficient to raise an implication of causation. *See Jean W,* 480 F.3d at 267; *Killen,* No. 06–4100, 2007 WL 2684541, at *8 (seventeen days insufficient to establish causation). No matter how offensive the treatment, Scott must allege "affirmative evidence" of a retaliatory motive, rather than a mere "general attack" on the Defendant' motivation. *See Crawford-El v. Britton,* 523 U.S. 574, 600 (1998). Similarly, Scott alleges no facts that would allow a reasonable factfinder to find that his cell was searched in 2018 in retaliation for the grievance and requests he filed. (Doc. 1, at 7). Scott does not name the officers who searched his cell, does not allege whether or how they knew of the requests and grievances he filed, and does not specify the time between when he filed the grievances and requests and when his cell was searched. (Doc. 1, at 7). A protected act and an adverse action are insufficient to state a retaliation claim; the plaintiff must state why he believes the adverse action arises from the protected act. *Rauser,* 241 F.3d at 333. Scott does not plead the causal element of his claims, thus Defendants' Motion to Dismiss is **GRANTED** as to Scott's claims of retaliation. (Doc. 23; Doc. 24, at 16-17).

### H. LEAVE TO AMEND

The Court recognizes that *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed with prejudice, *see Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. *Alston v. Parker,* 363 F.3d 229, 235-36 (3d

---

his Brief in Opposition he states that these incidents occurred in 2019. (*See* Doc. 1, at 7-9; Doc. 25).

Cir. 2004). So as to preserve Scott's rights as a *pro se* litigant, the Court will grant him leave to file a single, unified amended complaint curing any deficiencies described herein.

Scott is advised that the amended complaint must be a pleading that stands by itself without reference to the original complaint. *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). If Scott opts not to file an amended complaint, this action will proceed on his original complaint in accordance with this memorandum and order. If the Court does not receive an amended complaint from Scott on or before the deadline prescribed below, this action will proceed on his original complaint.

## III.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion to Dismiss as to Scott's claims of retaliation, all claims against Defendant Wetzel, any claim for monetary damages brought against Defendant Department of Corrections, and any claim for monetary damages brought against individual Defendants in their official capacities. (Doc. 23). The retaliation claims and the claims against Defendant Wetzel are **DISMISSED WITHOUT PREJUDICE,** with **leave to amend,** while the remaining dismissed claims are **DISMISSED WITH PREJUDICE**. Defendants' Motion to Dismiss is **DENIED** as to all other claims. The Court grants Scott leave to file an amended complaint within **thirty (30) days**.

An appropriate Order follows.

**BY THE COURT:**

Dated: February 8, 2021

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

- 27 -