# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

JAMAL SCOTT,

                   Plaintiff,

    v.

KEVIN KAUFFMAN, et al,

                   Defendants.

CIVIL ACTION NO. 3:19-CV-00695

(MEHALCHICK, M.J.)

## MEMORANDUM

Plaintiff Jamal Scott ("Scott"), an inmate currently housed at the State Correctional Institution at Huntingdon ("SCI-Huntingdon"), commenced this action *pro se* on April 24, 2019. (Doc. 1). On January 14, 2022, Scott filed a second amended complaint asserting violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Religious Freedom Restoration Act of 1993 ("RFRA") for which he seeks declaratory, injunctive, and monetary relief. (Doc. 41). Scott filed his second amended complaint asserting causes of action against ten defendants: the Pennsylvania Department of Corrections ("DOC"); SCI-Huntingdon staff including Facility Manager Kevin Kauffman, Facility Chaplaincy Program Director Darrell Wireman, Corrections Classification Program Manager ("CCPM") Ms. Sipple, Deputy Superintendent Mr. Walters, Facility Chaplains Bilgan Erdogan and Reverend Rainey, Corrections Officers C. Hawn, and CCPM and Deputy Superintendent Jill Spyker; and Ulrich H. Klem, DOC's Religion Volunteer and Recreational Services Program Administrator (collectively, "Defendants"). (Doc. 41).

On January 28, 2022, Defendants moved to dismiss Scott's complaint pursuant to Rule

8 of the Federal Rules of Civil Procedure. (Doc. 42). The motion to dismiss (the "motion")

has been fully briefed and is ripe for disposition. (Doc. 42; Doc. 43; Doc. 47).

For the reasons discussed herein, Defendants' motion shall be **GRANTED IN PART**

and **DENIED IN PART**. (Doc. 42).

## I.   BACKGROUND AND PROCEDURAL HISTORY

Scott filed his initial complaint on April 24, 2019, asserting violations of his federal

civil rights under 42 U.S.C. § 1983 and violations of RLUIPA seeking injunctive and

monetary relief.[1] (Doc. 1). In his initial complaint, Scott asserted causes of action against ten

defendants: the DOC; SCI-Huntingdon staff including Facility Manager Kevin Kauffman,

Facility Chaplaincy Program Director Mr. Wireman, Corrections Classification Program

Manager Ms. Sipple, Deputy Superintendent Scott Walters, Facility Chaplain Bilgan

Erdogan, and Corrections Officers Hawn and Mills; John Wetzel, the Secretary of

Corrections; and Ulrich H. Klem, DOC's Religion Volunteer and Recreational Services

Program Administrator (collectively, "Original Defendants"). (Doc. 1, at 1-2). On November

13, 2019, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to the undersigned's

jurisdiction to adjudicate all pretrial and trial proceedings relating to this action. (Doc. 16).

On November 13, 2019, Original Defendants moved to dismiss Scott's complaint

pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Doc. 14). The Court denied this

motion without prejudice to Original Defendants refiling a motion to dismiss to address any

substantive deficiencies. (Doc. 18; Doc. 19). Original Defendants filed another motion to

---

[1] Scott also filed an incomplete motion for leave to proceed *in forma pauperis* on April 24, 2019, and a second motion for leave to proceed *in forma pauperis* along with an inmate statement on May 8, 2019. (Doc. 2; Doc. 7). The Court granted Scott's motion for leave to proceed *in forma pauperis* on September 18, 2019. (Doc. 8).

dismiss on June 29, 2020. (Doc. 23). On February 8, 2021, the Court held that the Original Defendants' motion to dismiss was granted in part and denied in part and granted Scott leave to amend his complaint. (Doc. 26, at 27). Scott submitted an amended complaint on March 19, 2021. (Doc. 29). In his amended complaint, Scott added Defendants: Jill Spyker, Sergeant Corley, W. House, Brousseam, Reverend Rainey, and J. Stanoasli (collectively "New Defendants"). (Doc. 29, at 2-3). The New Defendants and Original Defendants filed a motion to dismiss the amended complaint on April 2, 2021. (Doc. 33). On December 21, 2021, the Court conducted a statutorily-mandated screening of the amended complaint in accordance with 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2) and found that Scott had failed to abide by the Court's Order granting him leave to amend. (Doc. 39, at 1). The Court granted Scott leave to file a second amended complaint and struck New Defendants' motion to dismiss as moot. (Doc. 39, at 8-9).

Scott filed his second amended complaint (the "complaint") on January 14, 2022, asserting claims against Defendants under the First, Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. 1983; violations of the RFRA; and violations of RLUIPA.[2] (Doc. 41, at 1).

Scott's allegations are divided into six parts, each of which is addressed below.[3]

---

[2] Defendants John Wetzel,  C.O. Mills, Sergeant Corley, W. House, Brousseam, and J. Stanoasli were not named in Scott's second amended complaint and were terminated from this action on January 14, 2022. (Doc. 41).

[3] The Court's recitation of facts is drawn from Scott's complaint, the allegations of which the Court must presume are true for purposes of Defendants' motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

### 1. <u>2018 and 2019 Ramadan</u>

Scott is a practicing Sunni Muslim and a member of the Ahlus-Sunnah Muslim Community ("ASMC") at SCI-Huntingdon. (Doc. 41, at 4). Scott is a practicing member of ASMC and has been fasting during the month of Ramadan with prison accommodations from 1992 to 2017. (Doc. 41, at 5). In 2018, Scott turned in his signup form requesting to participate in Ramadan without a signature.[4] (Doc. 41, at 5). Defendant Wireman return the form and indicated that Scott must include a signature on the form. (Doc. 41, at 5). Defendant Wireman consulted with Defendant Klem and provided Scott with an email from Defendant Klem presumably affirming the need for a signature. (Doc. 41, a 5). Scott asked Defendant Wireman if he was "refusing to allow [him] to fast and pray the congregational prayer?" to which Defendant Wireman replied that Scott must include a signature on the form. (Doc. 41, at 5). Scott filed a grievance on May 6, 2018, and appealed the issue to final review on August 27, 2018. (Doc. 1, at 5).

On April 30, 2019, Scott wrote to Defendant Erdogan and Defendant Spyker seeking accommodation to participate in the Ramadan fast and explained that signing the signup form "belittled the other days of fasting [and] constitutes blasphemy." (Doc. 41, at 5). On May 7, 2019, Defendant Spyker responded to Scott's request and stated that if he did not "follow the procedure by providing [his] signature [then he would] forfeit the accommodation the department makes for those who wish to fast." (Doc. 41, at 5-6). Scott filed a grievance on May 21, 2019, and appealed the issue to final review on September 1, 2019. (Doc. 41, at 6).

Scott explains that if he were to sign the form "he would be taking part in an

---

[4] Considering the surrounding context of the complaint, the Court concludes that Scott turned in the signup form between January 1, 2018, and April 19, 2018. (Doc. 41, at 5).

innovation" and that "[d]uring the time of the prophet Muhammad, it was not required to fill out a form in order to participate in Ramadan." (Doc. 41, at 6). Further, Scott states that without the department's accommodation, he would be required to either stockpile processed food from the commissary in conflict with the religiously required food of "fresh vegetables and the like" or carry food out of the dining hall in violation of prison regulations. (Doc. 41, at 6). Further, Scott states that other religions are not required to complete a signup form to participate in religious activities and that the sign-up form required to participate in Ramadan serves no legitimate purpose and unfairly targets Muslims, who are predominantly black inmates. (Doc. 41, at 13).

### 2. 2017 and 2018 'Id Feasts

Scott states that ASMC observes two 'Ids which involve prayer, sermon, and a meal. (Doc. 41, at 6). On March 27, 2017, Scott submitted proposals to Defendant Thomas, Defendant Sipple, and Defendant Wireman for 'Id accommodations for ASMC and did not receive a response. (Doc. 41, at 7). On April 19, 2017, Scott submitted another proposal and Defendant Kauffman responded that his proposal was "under review by management." (Doc. 41, at 7). Scott was later advised by Defendant Sipple and Defendant Wireman to submit an accommodation request, which he did on April 10, 2017. (Doc. 41, at 7). On June 23, 2017, Scott wrote to Defendant Sipple inquiring about the 'Id meal to which she replied that "[a]t the current time there is no plan to feed [ASMC] separately because of operational and staffing needs." (Doc. 41, at 7).

About a year later on March 16, 2018, Scott again wrote to Defendant Wireman and Defendant Kauffman seeking 'Id meals for ASMC. (Doc. 41, at 7). On April 6, 2018, Defendant Spyker advised Scott to submit a religious accommodation request. (Doc. 41, at

7). Scott filed a grievance on July 11, 2018, and appealed the issue to final review on September 10, 2018. (Doc. 41, at 8).

### 3. Retaliation

On March 16, 2018, Scott wrote to Defendant Wireman "quoting policy as it relates to his job and responsibilities to Faith Groups as it relates to the ASMC" and wrote to Defendant Kauffman.[5] (Doc. 41, at 8). The next day, Defendant Wireman rejected Scott's fasting accommodation even though he had been provided with accommodations in previous years without signing the accommodation form. (Doc. 41, at 8).

### 4. General Religious Claims

Scott argues that SCI-Huntingdon favored one Muslim community over ASMC and hired Defendant Erdogan. (Doc. 41, at 9). Scott contends that as a result of the hiring of Defendant Erdogan, the ASMC community has diminished. (Doc. 41, at 9-10). Further, Scott states that after a settlement was reached that created two separate Muslim communities, Defendants continued to undermine the settlement agreement by failing to accommodate ASMC, discouraging participation in ASMC, and making it harder for ASMC to participate in worship. (Doc. 41, at 10).

### 5. RHU-Related Claims

On two occasions, Scott has been placed in the RHU by Defendant Walters without being issued a misconduct. (Doc. 41, at 12). Scott states that while in the RHU, his property was taken and he had limited access to religious materials. (Doc. 41, at 12). Further, because Scott was in the RHU, ASMC did not have anyone qualified to lead their services and the

---

[5] Scott does not state the contents of his writing to Defendant Kauffman. (Doc. 41, at 8).

- 6 -

number of participating inmates fell below the 10-inmate requirement. (Doc. 41, at 12). ASMC services were discontinued and Scott can no longer perform his obligatory worship. (Doc. 41, at 12).

### 6. DVD-Related Claims

Scott contends that an Islamic community donated two box sets of DVDs to the prison. (Doc. 41, at 12). However, Scott asserts that the prison has failed to air the DVDs but has aired Wahhabi DVDs and Defendant Erdogan's lectures. (Doc. 41, at 12).

### 7. Demand for Relief

Scott seeks the following relief: (1) declaratory relief "by finding that the Defendants violated his constitutional and statutory rights;" (2) injunctive relief "by enjoining DOC to provide accommodations to enable [him] to observe the fast of Ramadan henceforth . . . [and] enjoining DOC to air aforementioned Sunni DVD[s];" (3) compensatory damages; (4) punitive damages; and (5) litigation costs. (Doc. 41, at 14).

## II. DISCUSSION

Defendants assert six reasons why Scott's claims should be dismissed. (Doc. 43, at 6-7). First, Defendants state that Scott has failed to meet the basic notice pleading standards regarding his (1) general religious, RHU, and DVD-related claims; (2) Fourth Amendment claims; and (3) Fifth Amendment claims. (Doc. 43, at 8-9, 12-13). Second, Defendants state that Scott does not assert that his request relating to the 'Id feast in 2018 was actually denied. (Doc. 43, at 9-11). Third, Defendants state that Scott has failed to state a claim upon which relief can be granted regarding his retaliation claim. (Doc. 43, at 11-12). Finally, Defendants allege that Scott's claims under the RFRA must be denied because the RFRA does not apply to state prison condition actions. (Doc. 43, at 13).

- 7 -

A. LEGAL STANDARDS

1. **Rule 12(b)(6)**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal conclusions…'" *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). The court

also need not assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan*, 20 F.3d at 1261. This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d at 347 (*citing Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing

*Twombly*, 550 U.S. at 545).

With these standards in mind, *pro se* documents must "be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Nevertheless, *pro se* plaintiffs are still subject to the base pleading requirements of Rule 8. *Rhett v. NJ State Superior Court*, 260 F. App'x 513 (3d Cir. 2008). If a complaint fails to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

### 2. **Section 1983**

Scott asserts federal civil rights claims pursuant to 42 U.S.C. § 1983. Section 1983 provides a private cause of action for violations of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a § 1983 claim, a plaintiff must demonstrate that the defendants, acting under color of state

law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

B.  S<small>COTT</small>'<small>S</small> "G<small>ENERAL</small> R<small>ELIGIOUS</small>" C<small>LAIMS</small>

Defendants contend that Scott has failed to meet the basic notice pleading standard in asserting his religious, RHU, and DVD-related claims.[6] (Doc. 43, at 8). Defendants aver that Scott "makes many general assertions . . . relating to what he perceives to be favoritism of one Muslim sect over another" including refusing to show ASMC DVDs. (Doc. 43, at 8). Defendants also contend that Scott makes general claims about insufficient access to religious materials. (Doc. 3, at 8-9). Specifically, Defendants state that Scott does not include a time frame for his facts and fails to connect factual allegations to his legal claims. (Doc. 43, at 9). In response, Scott notes facts that support his allegations and that his claims span over two years. (Doc. 47, at 3-5).

Liberally construing his complaint, the Court interprets Scott's claims regarding favoritism of one Muslim sect over ASMC and the facts concerning the DVDs as claims under the Fourteenth Amendment Equal Protection Clause. (Doc. 41, at 8-12). Additionally, the Court liberally interprets Scott's claims regarding his access to religious materials as being brought under the First Amendment. (Doc. 41, at 12).

First, it appears that Scott asserts a "traditional" equal protection claim: that he and others were treated differently from similarly situated individuals based on their sect of the Muslim religion. (Doc. 41, at 8-12). The Equal Protection Clause of the Fourteenth

---

[6] Although Defendants list Scott's retaliation claim in the heading of their first argument they do not address the merits of his retaliation allegations in their first argument and include such defenses in a separate section. (Doc. 43, at 8-9, 11-12). Thus, the Court examines Scott's retaliation claims separately. *See infra*.

Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Equal Protection Clause does not require that all persons be treated alike, but rather directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, the Equal Protection Clause protects prisoners from different treatment on account of religion. *See Williams v. Morton,* 343 F.3d 212, 221 (3d Cir. 2003). When stating an equal protection claim, a plaintiff must first show that he has been treated differently from similarly situated individuals. *See City of Cleburne*, 473 U.S. at 439. In a traditional case, an inmate asserts a defendant treated him differently from other similarly situated individuals because of his membership in an identifiable or protected class, such as race, religion, sex, or national origin. *Mack v. Warden Loretto FCI*, 839 F.3d 286, 305 n.112 (3d Cir. 2016). In a "class of one" claim, a plaintiff does not allege discrimination based on membership in a protected class or particular group, but rather, asserts a defendant treated him differently from others similarly situated for arbitrary or irrational reasons. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Phillips*, 515 F.3d at 243. Here, Scott alleges a "traditional" equal protection claim as he alleges that ASMC members were treated differently than other similarly situated members of other religious groups. (Doc. 41, at 8-12); see also *Mack,* 839 F.3d at 305 n.112.

In his complaint, Scott explains that SCI-Huntingdon's employment of Defendant Erdogan, who is the chaplain for the Muslim community, drew people away from ASMC and encouraged people to follow the Wahhabi teachings, an alternative Muslim sect. (Doc. 41, at 8-9). Scott argues that SCI-Huntingdon "favored [the Wahhabi] Muslim community" by hiring Defendant Erdogan who encouraged inmates not to attend ASMC prayer services and instead to engage in the practices of the Muslim sect in which he practiced. (Doc. 12, at

9-11). Scott also contends that in order to attend an ASMC service inmates were required to turn in their identification cards, however in order to attend the Jumu'ah service prisoners were not required to do so. (Doc. 41, at 10). Further, Scott alleges that an Islamic community donated two box sets of DVDs for the prisoners at SCI-Huntingdon to view, however, SCI-Huntingdon has not aired the DVDs but continues to air Wahhabi DVDs and Defendant Erdogan's lectures. (Doc. 41, at 12). As Scott has alleged that he and members of ASMC were treated differently than those in another Muslim sect, at this early stage of the proceeding Scott has alleged that Defendants treated him differently than other prisoners at SCI-Huntingdon who practice in a different Muslim sect.

Next, Scott seems to assert a First Amendment free exercise claim. Scott contends that Defendants Spyker and Rainey "restricted access to religious material" and that Defendants Wireman and Spyker discontinued the ASMC services resulting in Scott's inability to perform his obligatory worship. (Doc. 41, at 12). Additionally, Scott alleges a multitude of factors that inhibit his practice including refusing to announce the "Friday Prayers," interruptions to ASMC services, failure to purchase or make available a suitable rug, preventing volunteers from aiding ASMC in appropriate ways, and preventing a prayer schedule from a recognized ASMC authority. (Doc. 41, at 10-11).

In *Turner v. Safley*, the Supreme Court held that the following four factors are to be considered in determining whether a prison regulation is a reasonable restriction on the exercise of religion: (1) a "valid, rational connection between the prison regulation and [a] legitimate governmental interest;" (2) "whether [the inmates or detainees have] alternative means of exercising" the religious practice; (3) whether accommodating the religious practice would adversely affect corrections officers and other inmates and detainees; and (4) whether

an alternative to the restriction exists "that fully accommodates the prisoner's rights at *de minimus* cost to valid penological interests . . . ." 482 U.S. 78, 91 (1987). Third Circuit jurisprudence further imposes a gateway consideration that "[o]nly beliefs which are both sincerely held and religious in nature are protected under the First Amendment." *Sutton v. Rasheed,* 323 F.3d 236, 251 (3d Cir. 2003).

Here, Scott satisfies the gateway pleading requirement that his beliefs are sincere by stating that he is a member of ASMC, that he wishes to adhere to the Quran, that he "is obligated with praying in congregation, fasting, [and] learning issues of belief in Allah," and that he has been fasting during the month of Ramadan since 1992. (Doc. 41, at 4, 12). Further, Scott states that he has been inhibited in his ASMC practice through a variety of shortcomings by the prison including the cancellation of ASMC services. (Doc. 41, at 4, 12). Beyond this preliminary determination, the Court is unable to make a proper assessment of the *Turner* factors at the motion to dismiss stage because the fact-intensive inquiry called for in *Turner* requires at least some development of the evidentiary record. *See Brothers v. Lawrence Cty. Prison Bd.,* No. CIV.A. 06-1285, 2008 WL 146828, at *5 & n.7 (W.D. Pa. Jan. 14, 2008) ("[S]uch a multi-factored fact-intensive test as Turner's does not generally lend itself to being addressed in the context of a motion to dismiss . . . .").

The Court has a duty to liberally interpret a *pro se* complaint. *See Estelle,* 429 U.S. at 106. Considering Scott's factual comparisons and that the facts Defendants take issue with are included under the title "FREEDOM TO PRACTICE RELIGION," the Court was able to discern the crux of Scott's religious allegations. (Doc. 41, at 8-12). While the Court observes deficiencies in the complaint, the allegations are sufficient to put Defendants on notice of Scott's claims. The complaint may "contain[] repetitious and irrelevant matter," but it is an

- 14 -

error to dismiss such a complaint where the "disposable husk" surrounds "a core of proper pleading." *Garrett v. Wexford Health*, 938 F.3d at 69, 94 (3d Cir. 2019) (internal quotation marks omitted).

As such, Defendants' claim that Scott's "general religious, . . . RHU, and DVD-related claims should be dismissed" as they fail to meet the basic pleading standard shall be DENIED. (Doc. 43, at 8-9).

### C. Scott's Fourth Amendment Claim

Defendants argue that Scott's Fourth Amendment claims should be dismissed because he has failed to meet the basic notice pleading requirements. (Doc. 43, at 12). Specifically, Defendants are "unclear what action [Scott] is claiming violated his Fourth Amendment rights." (Doc. 43, at 13). Defendants also point to precedent that Scott's Fourth Amendment claims must fail as such protections are inconsistent with incarceration. (Doc. 43, at 12-13). Scott states that his claims under the Fourth Amendment arise because his "property was seized in a manner that served no legitimate institutional interest." (Doc. 47, at 8).

The Fourth Amendment provides citizens the right to be free from unreasonable seizure of their property. U.S. Const. amend. IV. However, such a right does not extend to the seizure of property in a prison context. "While many rights survive incarceration, however, it is clear that some rights retained by free citizens are necessarily extinguished by imprisonment." *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) "[T]he Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration." *Delie*, 257 F.3d at 316 (citing *Hudson v. Palmer*, 468 U.S. 517, 527 (1984)). The nature of incarceration and the security concerns at issue require "limitations upon many of the rights enjoyed by ordinary citizens" including the Fourth Amendment. *Hughes v. Kostingo,*

No. Civ.A.05-1283, 2006 WL 367890, at *2 (W.D. Pa. Feb. 15, 2006) (citing *Hudson*, 468 U.S. at 524; *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). Thus, the Fourth Amendment "does not protect an inmate from the seizure and destruction of his property." *Hughes*, 2006 WL 367890, at *2 (citing *Hudson*, 468 U.S. at 528 n. 8). "This does not mean a prisoner is without redress; it simply means a prisoner's form of redress is through the fifth and fourteenth amendments" *Hughes*, 2006 WL 367890, at *2 (citing *Hudson*, 468 U.S. at 540).

Scott has no Fourth Amendment protection regarding the seizure of his property as he was an inmate at SCI-Huntingdon at the time the seizure occurred. *See Hughes*, 2006 WL 367890, at *3. Therefore, Scott's Fourth Amendment claims shall be dismissed and Defendants motion regarding this claim shall be GRANTED. (Doc. 43, at 12-13).

D. SCOTT'S FIFTH AMENDMENT CLAIMS

Although a prisoner does not possess a Fourth Amendment right to deprivation of property, he may seek redress under the due process clause of the Fifth or Fourteenth Amendment. *See Hughes*, 2006 WL 367890, at *3 (citing *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989)). Defendants contend that Scott's Fifth Amendment claim should be dismissed because he does not indicate what right within the Fifth Amendment was violated. (Doc. 43, at 13). In his response, Scott argues that he has alleged that his Fifth and Fourteenth Amendment due process rights were violated when Defendants seized his property "under false pretenses." (Doc. 47, at 7). In his complaint, Scott states that he was placed in the RHU without a misconduct charge and that while he was in the RHU his property was seized. (Doc. 41, at 12). Liberally construing his complaint, the Court will assess whether Scott has alleged a due process violation in his placement in the RHU and the seizure of his property. (Doc. 41, at 12).

"In determining a prisoner's liberty interest regarding disciplinary action, we consider whether a particular restraint imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Islaam v. Kubicki*, 838 F. App'x 657, 660 (3d Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, (1995)). Placement in segregated housing rarely qualifies as a significant hardship. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven-month confinement in special housing unit based on false reports did not implicate a protected liberty interest). Additionally, the Third Circuit has held that placement in separate housing unit, even if based on inaccurate reasoning, "is part of the ordinary incidents of prison life." *Islaam*, 838 F. App'x at 660 (internal quotations omitted). Thus, liberally interpreting Scott's claims to allege a due process violation for being placed in the RHU without a misconduct charge his claim must fail as placement in the RHU is not "an atypical and significant hardship." *See Islaam*, 838 F. App'x at 660; (Doc. 41, at 12).

Scott's claims regarding deprivation of property in violation of the due process clause must similarly fail. (Doc. 41, at 12). To assert a claim for deprivation of property without due process of law, a prisoner must assert that an adequate post-deprivation remedy does not exist. *See Hudson*, 468 U.S. at 534-35. "For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable postdeprivation remedy." *Hudson*, 468 U.S. at 533. As Scott has alleged that he was able to file grievances regarding his deprivation of property, it appears that an adequate post-deprivation remedy for the loss exists. (Doc. 41, at 12). *See Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 422 (3d Cir.2000) (holding that prison's grievance program and internal review provide an adequate post-deprivation remedy to satisfy due process). Further, Pennsylvania provides a suitable post-deprivation remedy in the form of the Tort

Claims, which allows for damages for the loss of personal property in the possession or control of a local agency. 42 Pa. C.S. § 8542(b)(2); *Shakur v. Coelho*, 421 F. App'x 132, 134-35 (3d Cir. 2011) (plaintiff alleged that officers entered his cell and took his personal property and refused to return the property, however plaintiff was afforded due process through the "Pennsylvania Tort Claims Act which provides a remedy for intentional wrongs committed by state officials," and also allows for the return of property which has been instructed returned by a judge); *Reid v. Seville*, No. 96–2577, 1996 WL 421901, at *3-4 (E.D. Pa. July 19, 1996) (holding that because Pennsylvania tort law offers a remedy for prison officials' unlawful deprivation of inmate property, inmate failed to state a constitutional claim). Scott has failed to state a claim for deprivation of property without due process of law. *See Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995) (finding that both inmate grievance procedure and state tort law action constituted adequate post-deprivation remedies); *see also Hudson*, 468 U.S. at 533; *Tormasi v. Hayman*, 443 F. App'x 742, 746 (3d Cir. 2011); *Islaam*, 838 F. App'x at 660.

As Scott has failed to state a claim under the Fifth Amendment, Defendants' motion shall be GRANTED as to Scott's Fifth Amendment claims. (Doc. 43, at 13).

E.  SCOTT'S CLAIMS REGARDING THE 'ID FEAST IN 2018

Defendants contend that Scott's claims relating to an 'Id feast in 2018 should be dismissed because he does not assert that his request was actually denied.[7] (Doc. 42, at 9). Scott states that even though he does not include the word "denied" the response from Defendant Spyker constitutes a "definitive denial." (Doc. 47, at 6). Scott further argues that

---

[7] Although Scott's claims regarding the 2018 'Id feast may also be brought under the First Amendment, Defendants challenge Scott's claims under the RLUIPA as it "provides more expansive rights to inmates than the First Amendment." (Doc. 43, at 11). Thus, the Court assesses Scott's 2018 'Id feast claims under the RLUIPA.

the final appeal and decision regarding his grievances filed corresponding to his 'Id feast request indicate denials on two levels within the prison. (Doc. 47, at 6)

Under the RLUIPA, "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person . . . is in furtherance of a compelling governmental interest; and . . . is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc-1(a). The RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C.A. § 2000cc-5(7)(A).

Although Congress intended the RLUIPA to be construed "in favor of a broad protection of religious exercise," 42 U.S.C. § 2000cc-3(g), it also "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources.'" *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005) (quoting the RLUIPA's legislative history). The Supreme Court, therefore, reasons that when "requests for religious accommodation become excessive, impose unjustified burdens on other institutionalized persons, or jeopardize the effective functioning of an institution, the [prison is] free to resist the imposition." *Cutter*, 544 U.S. at 726. Finally, the "RLUIPA confers no privileged status on any particular religious sect, and singles out no bona fide faith for disadvantageous treatment." *Cutter*, 544 U.S. at 724.

The Third Circuit has established a two-step burden-shifting analysis to evaluate the

merits of an RLUIPA claim. First, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 277–78 (3d Cir. 2007). A burden on religious practice is substantial where:

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; [or] 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

> *Washington*, 497 F.3d at 280.

Once the inmate satisfies his burden of showing that his religious practice has been substantially burdened, the defendant may then rebut by showing "that the policy is in furtherance of a compelling governmental interest and is the least restrictive means of furthering this interest." *Washington*, 497 F.3d at 283. Further, RLUIPA allows only injunctive and declaratory relief. *Small v. Wetzel*, 528 F. App'x 202, 208 (3d Cir. 2013).

Scott claims that he was inhibited in his religious exercise of the two 'Id celebrations the second of which occurred in 2018. (Doc. 41, at 6-7). Scott explains that ASMC conducts 'Id ceremonies which consist of a sermon, performing congregational prayer, and having a meal. (Doc. 41, at 6-7). On March 16, 2018, Scott sought 'Id feast accommodations and wrote to Defendant Wireman and Defendant Kauffman. (Doc. 41, at 7). On April 6, 2018, Defendant Spyker responded to Scott's letters and stated that Scott needed to submit a religious accommodation request. (Doc. 41, at 7). On July 11, 2018, Scott filed a grievance that was appealed to final decision by September 10, 2018. (Doc. 41, at 7).

The Third Circuit has held that denying an inmate the opportunity to participate in the end of Ramadan meals when the meals are "central to the practice of his religion"

constitutes a substantial burden and gives rise to an RLUIPA claim. *Banks v. Secretary Pennsylvania Dept. of Corr.*, 601 F. App'x 101, 104-06 (3d Cir. 2015). Scott describes the 'Id meals as integral to his religion and that on multiple occasions he submitted 'Id proposals to DOC personnel. (Doc. 41, at 6-7). However, Scott only alleges that Defendants denied his 'Id proposals in 2017 when they stated, "at the current time there is no plan to feed [ASMC] separately because of operational and staffing needs." (Doc. 41, at 7).

Scott contends that Defendant Spyker's response advising him to submit a religious accommodation request is "a definitive denial." (Doc. 47, at 6). Further, Scott argues that the nature of a grievance appeal to the central office indicates multiple denials. (Doc. 47, at 6). Although seemingly exacting, the Court finds that Scott's failure to allege that he was denied an 'Id. feast in 2018 is fatal to his claim. While Scott argues that Defendant Spyker's response was essentially a denial, nothing within the complaint states that advice to seek another request form is a denial. (Doc. 41, at 7; Doc. 47, at 6). Further, although Scott pursued his grievance to final appeal, the filing of a grievance does not necessarily imply a denial of an 'Id. feast in 2018. (Doc. 41, at 7-8; Doc. 47, at 6).

Therefore, Scott has not alleged enough facts to demonstrate that his request for an 'Id. feast was denied in 2018. Defendants' motion to dismiss shall be GRANTED as to Scott's claim regarding the 'Id feast in 2018.[8] (Doc. 43, at 9-11).

---

[8] Additionally, the Court notes that RLUIPA does not permit an action for damages of any sort against Defendants in their individual capacities "as Pennsylvania, not Defendants, was the direct recipient of any federal funds." *See Sharp v. Johnson*, 669 F.3d 144, 154 (3d Cir. 2012). Thus, any claims against the Defendants in their individual capacities under RLUIPA are barred.

F. SCOTT'S RETALIATION CLAIMS

Defendants submit that Scott's retaliation claims should be dismissed because he does not identify any constitutionally protected conduct and because there is no causal link between any conduct and the denial of his request for Ramadan. (Doc. 43, at 12). Defendants further state that Scott "acknowledges that he was denied Ramadan because he refused to put his signature on the signup form." (Doc. 43, at 12). In response, Scott states that he was prevented from fasting with accommodations because he complained of First Amendment violations ASMC was facing. (Doc. 47, at 7). Scott further contends that in previous years he did not have to sign the signup form, but once he complained of First Amendment violations he was required to sign the form. (Doc. 47, at 7).

A prisoner alleging First Amendment retaliation must satisfy three elements: (1) that he engaged in a constitutionally protected activity, (2) that he suffered some adverse action at the hands of prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to" take the adverse action against him. *See Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir.2001) (quoting *Mount Healthy Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977)); *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000) (citing *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000)). If a plaintiff establishes a *prima facie* case of retaliation, the burden then shifts to the prison officials to demonstrate, by a preponderance of the evidence, that their actions would have been the same, even if the plaintiff were not engaging in the constitutionally protected activities. *Rauser,* 241 F.3d at 334 ("Once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would

have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.").

In his complaint, Scott states that on March 16, 2018, he wrote to Defendant Wireman "quoting policy as it relates to his job and responsibilities to Faith Groups as it relates to the ASMC" and that he wrote to Defendant Kauffman on the same day.[9] (Doc. 41, at 8). Additionally, Scott states that on March 16, 2018, he wrote to "Defendants Wireman and Kauffman seeking, among other things, 'Id meals for the ASMC." (Doc. 41, at 7). Scott states that the next day, his accommodation request to participate in fasting was denied by Defendant Wireman because he had not provided a signature, even though he had never had to provide his signature in years past. (Doc. 41, at 8).

Scott has "a constitutional right to ask for religious accommodations." *Lindsay v. Chesney*, 179 F. App'x 867, 869 (3d Cir. 2006). Scott wrote to Defendants Wireman and Kauffman seeking "'Id meals for the ASMC." (Doc. 41, at 7). Additionally, Defendant Wireman's rejection of Scott's fasting accommodation could constitute an adverse action for purposes of a retaliation claim. Scott alleges that he requested accommodation from Defendant Wireman for 'Id meals on March 16, 2018, and the next day Defendant Wireman rejected his request for fasting accommodations. (Doc. 41, at 7-8). Thus, at this stage in the proceedings, Scott has alleged that he engaged in a constitutionally protected activity, that he suffered an adverse action, and that those instances were temporally proximate to one another and involved the same Defendant to suggest retaliatory animus. (Doc. 41, at 7-8); *see*

---

[9] Scott does not indicate what he wrote to Defendant Kauffman, however the Court interprets the complaint to allege that the subject matter was the same as that written to Defendant Wireman. (Doc. 41, at 8).

- 23 -

*Rauser,* 241 F.3d at 333. While Defendants contend that Scott was denied fasting accommodations because he did not sign the sign-up form, taking the facts alleged in the complaint as true, Scott was "provided accommodation the previous year, and every year prior to that, without signing the accommodation form" thus indicating potential retaliation. (Doc. 43, at 12; Doc. 41, at 8).

Thus, Defendants' motion to dismiss Scott's claims of retaliation shall be DENIED. (Doc. 42, at 11-12).

G. Scott's RFRA Claim

Defendants contend that the RFRA "does not apply to state and local governments" and that Scott's claims under the RFRA must be dismissed. (Doc. 43, at 13). Scott does not contest this argument in his brief in opposition. (Doc. 47). In *City of Boerne v. Flores*, the United States Supreme Court held that the RFRA is unconstitutional as applied to state and local governments. 521 U.S. 507, 532-36; *see also Rogers v. U.S.*, 696 F. Supp. 2d 472, 486 n.8 (W.D. Pa. 2010). Courts in the Third Circuit have similarly held that the RFRA only applies to the federal government. *See Francis v. Mineta*, 505 F.3d 266, 269 n.3 (3d Cir. 2007); *Rogers*, 696 F. Supp. 2d at 486 n.8; *Hainey v. Carney*, No. 22-CV-1387, 2022 WL 1308510, at *7 (E.D. Pa. May 2, 2022) (RFRA did not apply to claims against Pennsylvania state correctional center). *Honkala v. U.S. Dep't of Hous. & Urb. Dev.*, No. 21-0684, 2022 WL 282912, at *6 (E.D. Pa. Jan. 31, 2022) (RFRA did not apply to claims against the City of Philadelphia).

As Defendants are all members of the DOC and thus part of the Commonwealth of Pennsylvania, the claims brought against them under the RFRA are improper. *See Hainey*, 2022 WL 1308510, at *7. Therefore, Scott's claims under the RFRA shall be dismissed and

Defendants motion to dismiss regarding his RFRA claims shall be GRANTED. (Doc. 43, at 13).

    H. LEAVE TO AMEND

    The Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment unless an amendment would be inequitable or futile. *See Grayson*, 293 F.3d at 108; *Shane v. Fauver,* 213 F.3d 113, 116-17 (3d Cir. 2000). The Third Circuit has also acknowledged that a district court has "substantial leeway in deciding whether to grant leave to amend." *Lake v. Arnold*, 232 F.3d 360, 373 (3d Cir. 2000); *see also Ruffin v. Mooney*, No. 3:16-CV-1987, 2017 WL 3390361, at *2 (M.D. Pa. Jan. 31, 2017) (dismissing prisoner-plaintiff's case without prejudice where it was unclear whether he was seeking relief under § 1983 or a habeas statute). A district court is justified in denying leave to amend if amendment would be "inequitable or futile" or upon "[a] plaintiff's 'repeated failure to cure deficiencies by amendments previously allowed . . . .'" *Kitko v. Young*, 575 F. App'x 21, 27 (3d Cir. 2014) (quoting *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004)). As noted above, Scott's claims regarding the 'Id. feast in 2018, his Fourth and Fifth Amendment rights, and the RFRA are subject to dismissal for failure to state a claim upon which relief may be granted. (Doc. 43, at 9-13). As Scott's claims under the Fourth Amendment, Fifth Amendment, and RFRA are not proper, amendment would be futile and Scott shall not be granted leave to amend these claims. Further, the Court has granted Scott two previous opportunities to amend his complaint and advised him of the deficiencies therein. (Doc. 26, at 26-27; Doc. 39, at 8). Thus, the Court will deny Scott leave to amend his 'Id. feast in 2018

claim as he has been provided ample opportunity to correct the deficiencies with previous amendments and has failed to do so.

As Scott is denied leave to amend, his complaint in its current forms sets forth claims for Equal Protection, retaliation, First Amendment violations, and a claim regarding the 'Id. feast in 2017.

## III.   CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' motion to dismiss as to Scott's claims regarding the 2018 'Id. feast, the Fourth and Fifth Amendments, and the RFRA. (Doc. 42). Scott's Fourth Amendment, Fifth Amendment, 'Id. feast in 2018, and RFRA claims are **DISMISSED**. Defendants' motion to dismiss is **DENIED** as to all other claims. (Doc. 42).

An appropriate Order follows.

BY THE COURT:

Dated: August 3, 2022                    *s/ Karoline Mehalchick*
                                         **KAROLINE MEHALCHICK**
                                         **Chief United States Magistrate Judge**