UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMAL SCOTT, | |
| Plaintiff, | CIVIL ACTION NO. 3:19-CV-00695 |
| v. | |
| | (MEHALCHICK, J.) |
| KEVIN KAUFFMAN, et al., | |
| Defendants. | |

**MEMORANDUM**

*Pro se* prisoner-Plaintiff Jamal Scott ("Scott"), a prisoner incarcerated at the State Correction Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), initiated this 42 U.S.C. § 1983 civil rights action by filing a complaint on April 24, 2019. (Doc. 1).[1] On January 14, 2022, Scott filed a second amended complaint asserting violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983 and violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Religious Freedom Restoration Act of 1993 ("RFRA") for which he seeks declaratory, injunctive, and monetary relief. (Doc. 41). Before the Court is a motion for summary judgment filed by Scott on April 29, 2024. (Doc. 92). For the following reasons, Scott's motion for summary judgment will be **DENIED**. (Doc. 92).

---

[1] For the purposes of this Memorandum, all definitions used in the Court's August 4, 2023 Memorandum and Order will apply, unless otherwise indicated. (Doc. 86; Doc. 87).

**I.    BACKGROUND AND PROCEDURAL HISTORY**[2]

Scott filed his initial complaint on April 24, 2019, asserting violations of his federal civil rights under 42 U.S.C. § 1983 and violations of RLUIPA seeking injunctive and monetary relief. (Doc. 1). In his initial complaint, Scott asserted causes of action against ten defendants: the DOC; SCI-Huntingdon staff including Facility Manager Kevin Kauffman, Facility Chaplaincy Program Director Mr. Wireman, Corrections Classification Program Manager Ms. Sipple, Deputy Superintendent Scott Walters, Facility Chaplain Bilgan Erdogan, and Corrections Officers Hawn and Mills; John Wetzel, the Secretary of Corrections; and Ulrich H. Klem, DOC's Religion Volunteer and Recreational Services Program Administrator (collectively, "Original Defendants"). (Doc. 1, at 1-2). Original Defendants filed a second motion to dismiss on June 29, 2020. (Doc. 23). On February 8, 2021, the Court granted in part and denied in part Original Defendants' motion to dismiss and granted Scott leave to amend his complaint. (Doc. 26, at 27). Scott filed an amended complaint on March 19, 2021, adding additional Defendants: Jill Spyker, Sergeant Corley, W. House, Brousseam, Reverend Rainey, and J. Stanoasli (collectively "New Defendants"). (Doc. 29, at 2-3). New Defendants and Original Defendants filed a motion to dismiss the amended complaint on April 2, 2021. (Doc. 33). On December 21, 2021, the Court conducted its statutorily-mandated screening of the amended complaint in accordance with 28 U.S.C. §

---

[2] This Court previously laid out the factual background and all disputed facts in its August 4, 2023 Order. (Doc. 86, at 2-12). That background was based upon Remaining Defendants' statement of material facts and accompanying exhibits, as well as Scott's response to Remaining Defendants' statement of material facts and accompanying exhibits. (Doc. 86, at 2-12). Scott has not submitted a statement of material facts to support his motion for summary judgment. No exhibits have been added to the record since August 4, 2023 Order. Therefore, the factual background remains unchanged from this Court's discussion of it in its August 4, 2023 Order and the Court will not repeat it here.

1915A and 28 U.S.C. § 1915(e)(2) and found that Scott had failed to abide by the Court's Order granting him leave to amend. (Doc. 39, at 1). The Court granted Scott leave to file a second amended complaint and struck New Defendants' motion to dismiss as moot. (Doc. 39, at 8-9). (Doc. 29).

Scott filed his second amended complaint (the "complaint") on January 14, 2022.³ (Doc. 41). On January 28, 2022, Remaining Defendants filed a motion to dismiss Scott's complaint pursuant to Rule 8 of the Federal Rules of Civil Procedure. (Doc. 42). On August 3, 2022, the Court granted in part and denied in part Remaining Defendants' motion to dismiss. (Doc. 48; Doc. 49). On August 24, 2022, Remaining Defendants filed an answer to Scott's complaint. (Doc. 50). On March 8, 2023, Remaining Defendants filed a motion for summary judgment, as well as a statement of material facts, appendix of exhibits, and brief in support. (Doc. 67; Doc. 68; Doc. 69; Doc. 71). On May 10, 2023, Scott filed a brief in opposition to the motion for summary judgment and a response to Defendants' statement of facts. (Doc. 77; Doc. 78). On August 4, 2023, the Court issued an Order which granted in part and denied in part a motion for summary judgment filed by Remaining Defendants. (Doc. 67; Doc. 86; Doc. 87). According to the August 4, 2023 Order, the only claims remaining are Scott's DVD-related claims against Defendants Rainey and Spyker. (Doc. 86; Doc. 87).

Scott filed the instant motion on April 29, 2024. (Doc. 92). He did not file a statement of facts or any supporting exhibits. On May 3, 2024, Scott filed a brief in support of his motion. (Doc. 93). Defendants Rainey and Spyker filed a brief in opposition to the motion on May

---

³ Defendants John Wetzel, C.O. Mills, Sergeant Corley, W. House, Brousseam, and J. Stanoasli were not named in Scott's second amended complaint and were terminated from this action on January 14, 2022. (Doc. 41).

16, 2024. (Doc. 94). Scott's motion for summary judgment has therefore been fully briefed and is ripe for disposition. (Doc. 92; Doc. 93; Doc. 94).

**II.    STANDARDS OF REVIEW FOR MOTION FOR SUMMARY JUDGMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *Morrison v. United States*, No. 1:20-CV-01571, 2021 WL 4192086, at *3 (M.D. Pa. Sept. 15, 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (noting that *pro se* parties "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants")).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd.*

*v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony . . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment."). With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### III. DISCUSSION

#### A. SCOTT'S MOTION IS UNTIMELY.

As a preliminary matter, Defendants Rainey and Spyker argue that Scott's motion for summary judgment should be denied as untimely. (Doc. 94, at 2). The deadline for the parties to file dispositive motions was on or before March 8, 2023. (Doc. 59). Defendants Rainey and Spyker again accurately represent that Scott filed other motions between December 2022 and March 2023, but failed to request an extension of time for him to file dispositive motions. (Doc. 60; Doc. 61; Doc. 62; Doc. 64; Doc. 65). Scott filed the instant motion on April 29, 2024, over a year after the expiration of the March 8, 2023 deadline. (Doc. 92).

The Third Circuit has instructed that *pro se* prisoner-plaintiffs' motions abide by time restrictions with very narrow exceptions. *Long v. Atl. City Police Dep't*, 670 F.3d 436, 444 n.16 (3d Cir. 2012) ("District courts should [. . .] hew strictly to the stated time limits, unless there is prison delay that serves as a basis for treating an untimely motion as timely."). This Court is therefore prohibited from considering Scott's motion unless Scott experienced a "prison delay" or otherwise properly tolled the deadline for submission of dispositive motions. *See Long*, 670 F.3d at 444 n.16. Scott has not offered any explanation as to why his motion was untimely by more than a year. (Doc. 93). Further, given that he filed several other documents in the period from December 2022 to March 8, 2023, this Court cannot assume that he has properly tolled the deadline or experienced a prison delay. (Doc. 60; Doc. 61; Doc. 62; Doc.

64; Doc. 65). Accordingly, Scott's motion for summary judgment is **DENIED** as untimely. (Doc. 92).

      B.      S<span style="font-variant:small-caps">cott's</span> RLUIPA C<span style="font-variant:small-caps">laims.</span>

Neither party has filed a motion for reconsideration. However, so long as a Court retains its jurisdiction over a case, it may *sua sponte* correct or reconsider its previous decisions when it is consonant with justice. See *CareDx, Inc. v. Natera, Inc.*, 563 F. Supp. 3d 329, 332 (D. Del. 2021), *aff'd*, 40 F.4th 1371 (Fed. Cir. 2022) ("Under Third Circuit law, which governs the procedures by which this case is handled, a district court may revisit a prior decision *sua sponte* so long as it has not entered a final judgment depriving it of jurisdiction to reconsider the issue.") (citing *DeFranco v. Wolfe*, 387 F. App'x 147, 155 (3d Cir. 2010); *Escanio v. United Parcel Serv.*, 538 F. App'x 195, 199 (3d Cir. 2013)); *see also Marsden v. Select Med. Corp.*, No. CIV.A. 04-4020, 2007 WL 518556, at *1 (E.D. Pa. Feb. 12, 2007) (finding that a district court has the inherent power to correct its earlier decisions when justice requires it and stating that "rectifying a clear error of law is consonant with justice" and "[i]t is therefore clearly proper for the Court to reconsider its earlier decision *sua sponte*"). The Court retains jurisdiction over this matter because the DVD-related claims remain active. (Doc. 87). With active claims, the Court may therefore correct or revise its earlier decisions. *See Marsden*, 2007 WL 518556, at *1 ("Moreover, as this [c]ourt's April 6, 2006 [m]emorandum [o]pinion and [o]rder did not dispose of every claim, it is 'subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of the parties.'") (quoting Fed. R. Civ. P. 54(d)).

In reviewing the Court's August 4, 2023 Memorandum and Order, the Court found that it disposed of Scott's RLUIPA and First Amendment Ramadan claims together by

applying only the legal standard for review of First Amendment claims. (Doc. 86, at 24-27). However, RLUIPA claims require a different standard than First Amendment claims. The Court will therefore clarify its RLUIPA analysis. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). The statute states that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—
>
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc–1(a).

"Religious exercise" refers to "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc–5(7)(A). "Although RLUIPA bars inquiry into whether a particular belief or practice is 'central' to a prisoner's religion [. . .], the Act does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter*, 544 U.S. at 725 n.13 (internal citation omitted).

"[A] substantial burden exists where: (1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR (2) the government puts substantial pressure on an adherent to substantially modify his behavior to violate his beliefs." *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007). If an inmate satisfies his initial burden of showing that a practice substantially burdens his religious exercise, the burden then shifts to the government to show that the challenged

policy "is in furtherance of a compelling governmental interest and is the least restrictive means" to further that interest. *Washington*, 497 F.3d at 283 (citing 42 U.S.C. § 2000cc–1(a)).

In its August 4, 2023 Memorandum, the Court recognized that the policies and practices related to the requirement of a sign-up form for participation in Ramadan accommodations were reasonably related to the prison's legitimate interest in institutional security and maintaining order. (Doc. 86, at 24-27). This analysis is sufficient for the First Amendment claims. *Turner*, 482 U.S. at 89-91. The Court did not consider whether the actions were the least restrictive means of furthering that legitimate interest, as required by RLUIPA. (Doc. 86, at 27); *Washington*, 497 F.3d at 283. Without explaining the RLUIPA test, the Court disposed of the RLUIPA claims because it determined that "there is nothing in the record to lead the Court to conclude that Scott's ability to practice his faith was restricted." (Doc. 86, at 26). In other words, the Court found that Scott did not meet his initial burden of showing that a practice substantially burdens his religious exercise, reasoning that Scott could have fasted on his own, but did not properly lay out the RLUIPA test separately from the First Amendment test. (Doc. 86, at 26). The Court now clarifies that Remaining Defendants were entitled to summary judgment on Scott's RLUIPA claims because Scott did not meet his initial burden under RLUIPA of showing that his religious exercise was burdened. *Washington*, 497 F.3d at 280. Accordingly, Scott's RLUIPA claims are **DISMISSED**. (Doc. 41).

IV. **CONCLUSION**

For the reasons stated herein, the Scott's motion for summary judgment is **DENIED**. (Doc. 92). In addition, Remaining Defendants were properly granted summary judgment on

the RLUIPA claims. (Doc. 41; Doc. 87). Only the DVD-related claims against Defendants Rainey and Spyker remain pending before this Court. (Doc. 41).

      An appropriate Order follows.

                                                                  **BY THE COURT:**

**Dated: January 21, 2025**                              *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **United States District Judge**